# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
May 4, 2005 Session

## STATE OF TENNESSEE v. EMMA HAWK, a/k/a BETTY WILLIS

**Appeal by permission from the Court of Criminal Appeals**
**Circuit Court for Washington County**
**No. 28436A    Robert E. Cupp, Judge**

**No. E2004-02315-SC-S09-CD - Filed August 18, 2005**

Relying upon a common law rule, the trial court continued the defendant's trial on the charge of accessory after the fact to first degree murder until after the trial and conviction of the principal offender. The defendant sought interlocutory review of the trial court's order, asserting that her Sixth Amendment right to a speedy trial has been violated by application of the common law rule. The Court of Criminal Appeals refused to grant the defendant's application for an interlocutory appeal, finding no reason to deviate from the general practice of evaluating speedy trial claims on direct appeal. We granted the defendant permission to appeal to consider the following issues of law: (1) whether the Tennessee Criminal Sentencing Reform Act of 1989, 1989 Tenn. Pub. Acts ch. 591 ("Reform Act"), abrogated the common law rule that a principal must be tried and convicted before an accessory after the fact may be tried; (2) if not, should this Court judicially abrogate the common law rule; and (3) whether a defendant is entitled to interlocutory review of the trial court's order denying her motion to dismiss the indictment because of an alleged violation of her Sixth Amendment right to a speedy trial. We hold that the common law rule has not been abrogated by the Reform Act, and we decline to judicially abrogate it. We also hold that the defendant is not entitled to seek interlocutory review of the trial court's order rejecting her alleged Sixth Amendment speedy trial violation. Applying these holdings, we affirm the judgment of the Court of Criminal Appeals insofar as it denied the defendant interlocutory review of her speedy trial claim, and we affirm the judgment of the trial court which continued the defendant's trial on the charge of accessory after the fact until after the trial of the principal offender. We remand this case to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 9(c); Judgment of the Court of Criminal Appeals Affirmed in Part;**
**Judgment of the Trial Court Affirmed; and Case Remanded to the Trial Court**

FRANK F. DROWOTA III, C. J., delivered the opinion of the court, in which E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Clifton Corker, Johnson City, Tennessee, for the appellant, Emma Hawk a/k/a Betty Willis

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Michelle Chapman McIntire, Assistant Attorney General; Joe C. Crumley, Jr., District Attorney General; and Steve Finney, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual and Procedural Background

The defendant, Emma Hawk, also known as Betty Willis, ("Hawk" or "defendant"), was charged on March 4, 2003, as an accessory after the fact to first degree murder, two counts of abuse of a corpse, and one count of soliciting another to destroy evidence, all Class E felonies.[1]  The defendant's son, Howard Willis ("Willis"), has been charged with first degree murder for allegedly killing two teenage acquaintances.  The charges against the defendant are based on allegations that she helped her son hide the victims' bodies in a storage facility and that she instructed another person to destroy an audio tape recording of her son admitting that he had placed the victims' bodies in the storage facility.

Six months after she was indicted, the defendant filed a motion for a speedy trial.  The trial court granted the defendant's motion and set a trial date for December 15, 2003.  One week before the trial was scheduled to begin, the prosecution requested a continuance of the defendant's case until after the conclusion of Willis's trial and conviction on the murder charges.  Pointing to a common law rule, the prosecution maintained that it could not proceed against the defendant on the charge of accessory after the fact to first degree murder until after Willis, the principal offender, had been tried and convicted of first degree murder.  The trial court agreed with the prosecution's legal argument, granted the requested continuance, and denied the defendant's request to dismiss the indictment.  However, the trial court granted the defendant permission to seek an interlocutory appeal from its order, finding that the issue concerning the timing of the trials of the defendant, an accessory after the fact, and her son, the principal offender, would be moot by the time of final judgment in the defendant's case.  See Tenn. R. App. P. 9.  In her application for permission to appeal, the defendant asserted that the Reform Act had abrogated the common law rule that a principal offender must be convicted before a person alleged to be an accessory after the fact may be tried.  The defendant alternatively asserted that, even if the common law rule had not been abrogated by the Reform Act, its application had violated her Sixth Amendment right to a speedy trial.  The Court of Criminal Appeals denied the defendant's application for interlocutory appeal, concluding that the defendant had presented "no reason to deviate from the general rule of evaluating the defendant's speedy trial claim on appeal if she is in fact brought to trial and convicted."  We granted permission to appeal.

### II. Standard of Review

This appeal presents the following issues of law: (1) whether the Reform Act abrogated the

---

[1]Tenn. Code Ann. § 39-17-312 (abuse of a corpse); § 39-11-411 (accessory after the fact); § 39-12-102 (soliciting another to destroy evidence).

common law rule that a principal must be convicted before a person alleged to be an accessory after the fact may be tried; (2) if not, should this Court judicially abrogate the common law rule; and (3) whether a defendant is entitled to interlocutory appellate review of a trial court's order denying a motion to dismiss an indictment based on an alleged violation of the Sixth Amendment right to a speedy trial. We review these issues of law de novo, with no presumption of correctness afforded to the lower courts' conclusions. Lacy v. Cox, 152 S.W.3d 480, 483 (Tenn. 2004); Kyle v. Williams, 98 S.W.3d 661, 663-64 (Tenn. 2003); Ki v. State, 78 S.W.3d 876, 879 (Tenn. 2002).

### III. Accessory Liability at Common Law

The common law has traditionally recognized two categories of criminal offenders: principals and accessories. Principal offenders were present at the commission of the criminal act. 4 William Blackstone, Commentaries *34.[2] Accessory offenders were not present at the commission of the offense but provided assistance to the principal offender either before or after a criminal offense had been committed. Id. at *35. This category of offenders was divided into two groups: an accessory before the fact was defined as "one who being absent at the time of the crime committed, doth yet procure, counsel, or command another to commit a crime." Id. at *36. An accessory after the fact was defined as an offender who, "knowing a felony to have been committed, receives, relieves, comforts, or assists the felon." Id. at *37. The criminal liability of the accessory was linked to that of the principal so that an accessory could not be tried until "after the principal was convicted, or at least [an accessory] must have been tried at the same time with [the principal]." Id. at *40. This rule was designed to prevent the "absurdity" of the accessory being convicted one day and the principal being acquitted the next day. See id. at *323.

In 1843, this Court adopted the common law rule, stating: "It is well settled by the common law that an accessory can not be put upon trial without his own consent, previous to the attainder of his principal, unless they be jointly tried." Whitehead v. State, 23 Tenn. 278, 281 (1843). "[T]he reason of this rule is very plain. If there is no principal, there can be no accessory . . . ." Id. at 283. This Court acknowledged that the common law rule had "been modified in England by various statutes," id., but emphasized that "[t]he provisions of none of these statutes are in force in this State; the question as to the propriety of introducing them is for the consideration of another department of the State, the legislature." Id.

Three years after this Court's decision in Whitehead, the legislature, in 1846, abrogated the common law rule as to accessories before the fact, but did not alter its application to accessories after the fact. See 1846 Tenn. Pub Acts ch. 73 (providing that an accessory before the fact may be indicted and convicted "whether the principal felon shall or shall not have been previously convicted . . . ."), *codified at* Tenn. Code of 1871 § 4591 (Thompson & Steger) ("An accessory before the fact may be prosecuted and convicted for a substantive felony, whether the principal felon has or has not

---

[2]This category of offenders was further divided into two subgroups: principals in the first degree and principals in the second degree. A principal in the first degree was defined as "the actor or the absolute perpetrator of the crime," and a principal in the second degree was defined as an offender who either actively or constructively was "present, aiding and abetting the fact to be done." 4 Blackstone Commentaries *34.

been previously convicted . . . .").  In 1873, this Court discussed this legislative change as follows:

> It is conceded that an accessory after the fact cannot be tried until after the trial and conviction of the principal, unless by his consent.  At common law this was so as to the accessory either before or after the fact, but with us this has been changed by statute as to an accessory before the fact, <u>but remains as before as to an accessory after the fact.</u>

<u>State v. Rogers</u>, 65 Tenn. 563, 565 (1873) (emphasis added) (citing Code § 4590).[3]

This Court most recently considered the common law rule in <u>Wilson v. State</u>, 230 S.W.2d 1014 (Tenn. 1950).  Citing <u>Rogers</u>, we again emphasized that, although the common law rule had been legislatively abrogated as to accessories before the fact,[4] the rule remained applicable under the statute defining the offense of accessory after the fact.[5]  <u>Id.</u> at 1016 (stating that the statute "contemplates that in a separate trial of an accessory after the fact without his principal, it must be shown that his principal has been tried and convicted"); see also <u>State v. Hodgkinson</u>, 778 S.W.2d 54, 63 (Tenn. Crim. App. 1989) ("[I]n order for the state to prevail on a charge of accessory after the fact it must introduce evidence [that] the principal has been tried and convicted of the crime.") (citing <u>Wilson</u>, 230 S.W.2d 1014); <u>Pique v. State</u>, 499 S.W.2d 4, 6 (Tenn. Crim. App. 1973) ("If the defendant, Duncan's principal, was acquitted, then Duncan could not be convicted as an accessory after the fact.") ( citing <u>Wilson</u>, 230 S.W.2d 1014).

Whether the common law rule remains applicable to the offense of accessory after the fact is again at issue in this appeal.  The defendant acknowledges that Tennessee courts have continued to require conviction of the principal before trying  an accessory after the fact.  Nonetheless, the defendant maintains that the Reform Act has abrogated the common law rule by abolishing common law offenses and by failing to include the prior conviction requirement in the definition of accessory after the fact.  According to the State, the Reform Act has not clearly abrogated the common law

---

[3]<u>Rogers</u> here erroneously cites section 4590 instead of section 4591of the 1871 Code (Thompson & Steger).

[4]The statute under consideration in <u>Rogers</u> provided as follows: "An accessory before the fact may be prosecuted and convicted for a substantive felony, whether the principal felon has or has not been previously convicted . . . ."  Tenn. Code of 1932 § 10761 (Williams, Shannon & Harsh), *recodifying* Tenn. Code of 1871 § 4591 (Thompson & Steger).

[5]The statute defining accessory after the fact provided as follows:

> A person who, after the commission of a felony, harbors, conceals, or aids the offender, with intent that he may avoid or escape from arrest, trial, conviction, or punishment, having knowledge or reasonable ground to believe that such offender is liable to arrest, has been arrested, is indicted or convicted, or has committed a felony, is an accessory after the fact.

Tenn. Code of 1932 § 10764.

rule. Nevertheless, the State urges this Court to judicially abrogate the rule.

In resolving this issue, we apply familiar rules of statutory construction, the most basic of which is that courts must attempt to give effect to the legislative purpose and intent of a statute, as determined by the ordinary meaning of its text, rather than seek to alter or amend it. See, e.g., Mooney v. Sneed, 30 S.W.3d 304, 306-07 (Tenn. 2000) (citations omitted). To this end courts must keep in mind that the "legislature is presumed to use each word in a statute deliberately, and that the use of each word conveys some intent and has a specific meaning and purpose." Bryant v. Genco Stamping & Mfg. Co., 33 S.W.3d 761, 765 (Tenn. 2000). "Consequently, where the legislature includes particular language in one section of the statute but omits it in another section of the same act, it is presumed that the legislature acted purposefully in including or excluding that particular subject." Id.; see also Wilkins v. Kellogg Co., 48 S.W.3d 148, 152 (Tenn. 2001).

Applying these rules, we conclude that the Reform Act has not abrogated the common law rule as to the offense of accessory after the fact. Tennessee Code Annotated section 39-11-411 (2003) provides:

> (a) A person is an accessory after the fact who, after the commission of a felony, with knowledge or reasonable ground to believe that the offender has committed the felony, and with the intent to hinder the arrest, trial, conviction or punishment of the offender;
> (1) Harbors or conceals the offender;
> (2) Provides or aids in providing the offender with any means of avoiding arrest, trial, conviction or punishment; or
> (3) Warns the offender of impending apprehension or discovery.
> (b) This section shall have no application to an attorney providing legal services as required or authorized by law.
> (c) Accessory after the fact is a Class E felony.

Although this statute does not mention the common law rule, it defines accessory after the fact similarly to the manner in which the offense was defined by the statute at issue in Wilson—a statute that this Court interpreted as contemplating the common law rule. See 230 S.W.2d at 1016. "The Legislature is presumed to know the state of the law at the time it passes legislation." State v. Mixon, 983 S.W.2d 661, 669 (Tenn. 1999). Moreover, the legislature has directed that the Reform Act "shall be construed according to the fair import of [its] terms, including reference to judicial decisions and common law interpretations, to promote justice, and effect the objectives of the criminal code." Tenn. Code Ann. § 39-11-104 (2003) (emphasis added). By defining accessory after the fact in a manner similar to the statutory definition of the offense at issue in Wilson and by also declaring that the Reform Act is to be construed by reference to judicial decisions and common law interpretations, the legislature has evinced an intent to retain the common law rule as to accessories after the fact.

Further evidence indicating that the General Assembly intended to retain the common law

rule as to accessories after the fact is the Reform Act's explicit abrogation of the rule as to accessories before the fact. Although the Reform Act does not use the term accessory before the fact, offenders that would have been categorized at common law as accessories before the fact are now charged and prosecuted pursuant to a theory of criminal responsibility for the conduct of another. See Tenn. Code Ann. § 39-11-402(2) (2003) and Sentencing Commission Comments. Notably, the legislature has declared that in such prosecutions, "it is no defense that . . . [t]he person for whose conduct the defendant is criminally responsible has been acquitted, has not been prosecuted or convicted, has been convicted of a different offense or different type or class of offense, or is immune from prosecution." Tenn. Code Ann. § 39-11-407(2) (2003). This statutory provision explicitly abrogates the common law rule as to offenders whom the common law classified as accessories before the fact. Where the General Assembly has expressly abrogated the common law rule as to accessories before the fact, we must presume that its failure to do so as to accessories after the fact is intentional and purposeful. Wilkins, 48 S.W.3d at 152. Indeed, the distinction drawn by the Reform Act is wholly consistent with longstanding Tennessee law. As previously explained, in 1846 the General Assembly abrogated the common law rule as to accessories before the fact but retained it as to accessories after the fact. See Rogers, 65 Tenn. at 565. The Reform Act has simply maintained this well-settled distinction. Therefore, applying the rules of statutory construction, we conclude that the Reform Act did not abrogate the common law rule as to the offense of accessory after the fact.

The State urges this Court to judicially abrogate the common law rule, pointing out that the rule has been legislatively or judicially abrogated by a majority of jurisdictions and arguing that the justification for the rule is no longer applicable because accessory liability is no longer derivative. We decline to do so.

Although this Court has not hesitated to abrogate outmoded common law rules where the legislature has neither expressly nor implicitly indicated an intent to retain the rule,[6] in this case we have considered the relevant statutes and discerned a legislative intent to retain the common law rule as to accessories after the fact. The State may be correct; perhaps the common law rule should be modified. However, as this Court has often recognized, "'[t]he power to define what shall constitute a criminal offense . . . is vested in the legislature.'" State v. Farner, 66 S.W.3d 188, 200 (Tenn. 2001) (quoting State v. Burdin, 924 S.W.2d 82, 87 (Tenn. 1996) and citing additional cases). We decline therefore to judicially abrogate the common law rule. We conclude that whether the common law rule should be abrogated as to accessories after the fact is a question for the General Assembly. See Whitehead, 23 Tenn. at 283.

We therefore hold that a person charged as an accessory after the fact may not be tried prior to the principal offender being convicted unless the person charged as an accessory after the fact expressly consents to waive the common law rule.[7] Applying this holding, we conclude that the trial

---

[6]See, e.g., State v. Rogers, 992 S.W.2d 393 (Tenn. 1999) (abrogating the common law year-and-a-day rule).

[7]The common law rule does permit an accessory after the fact to be tried jointly with a principal offender.

-6-

court did not err in granting the prosecution's motion for a continuance in this case. Unless the defendant Hawk expressly consents, her trial on the charge of accessory after the fact must be delayed until after the trial and conviction of her son, Willis, the principal offender. See Rogers, 65 Tenn. at 565 ("[A]n accessory after the fact cannot be tried until after the trial and conviction of the principal, unless by his consent.") (emphasis added); Whitehead, 23 Tenn. at 281 ("[A]n accessory cannot be put upon trial, without his own consent, previous to the attainder of his principal, unless they be jointly tried.") (emphasis added). The trial court may not infer consent; should the defendant wish to proceed to trial she must expressly relinquish her right to be tried after the principal offender has been convicted. Whitehead, 23 Tenn. at 282 (stating that "an express relinquishment" of the right would be necessary).

## IV. Interlocutory Appeal

The defendant claims that applying the common law rule to delay her trial has violated her Sixth Amendment right to a speedy trial. The defendant asks this Court to either dismiss the charge of accessory after the fact or to sever this charge and direct the prosecution to proceed to trial on the remaining charges. Relying upon United States v. MacDonald, 435 U.S. 850 (1978), the State responds that the defendant is not entitled to interlocutory review of the trial court's denial of her motion. We agree with the State.

In MacDonald, the defendant was a suspect in the February 17, 1970, murder of his wife and two daughters. 435 U.S. at 851. However, due to an extensive investigation the defendant was not indicted until January 24, 1975. Id. at 851-52. Shortly thereafter MacDonald moved to dismiss the indictments, alleging that his Sixth Amendment right to a speedy trial had been violated. Id. The district court denied the defendant's motion, but the United States Court of Appeals for the Fourth Circuit stayed the defendant's trial and permitted him to pursue an interlocutory appeal. Id. The Fourth Circuit thereafter concluded that the defendant's right to a speedy trial had been violated and reversed the district court's denial of the defendant's motion to dismiss. Id. at 852-53.

The United States Supreme Court granted the government's petition for certiorari and reversed. The Court concluded that an interlocutory appeal is not the appropriate method by which to review a speedy trial claim. Id. at 853. The Court reiterated that interlocutory appeals are disfavored, particularly in criminal prosecutions, because finality is indispensable to meaningful appellate review. Id. at 853, 857. The Court stressed that speedy trial claims lack finality because they do not terminate the criminal proceeding in the trial court. Id. at 857. Furthermore, the Court explained that the resolution of a speedy trial claim necessitates a thorough assessment of the particular facts of each case, and the facts key to this assessment are best developed at trial. Id.

The Court emphasized that to prevail upon a speedy trial claim a defendant must prove prejudice,[8] and one of the key inquiries in determining whether a defendant has been prejudiced by a delay in the prosecution is whether the delay has impaired the defendant's ability to prove

---

[8]See, e.g., Barker v. Wingo, 407 U.S. 514, 530-32 (1972); State v. Simmons, 54 S.W.3d 755 (Tenn. 2001).

innocence.  Id. at 858.  The Court explained that because the essence of a speedy trial claim is that the passage of time has inhibited the defendant's ability to establish innocence, any estimate prior to trial of the degree to which prosecutorial delay impairs an adequate defense "tends to be speculative."  Id. at 858.  The Court also concluded that even if the degree of prejudice could be accurately assessed prior to trial, a speedy trial claim is not appropriate for interlocutory review because such claims are not sufficiently independent of the outcome of the trial and are thus best evaluated on direct appeal.  Id. at 859.  Responding to the argument that requiring a defendant to raise a speedy trial claim on direct appeal exacerbates the alleged violation, the Court stated:

> There perhaps is some superficial attraction in the argument that the right to a speedy trial . . . must be vindicated before trial in order to insure that no nonspeedy trial is ever held.  Both doctrinally and pragmatically, however, this argument fails.  Unlike the protection afforded by the Double Jeopardy Clause, the Speedy Trial Clause does not, either on its face or according to the decisions of this Court, encompass a "right not to be tried" which must be upheld prior to trial if it is to be enjoyed at all.  It is the delay before trial, not the trial itself, that offends against the constitutional guarantee of a speedy trial.  If the factors outlined in *Barker v. Wingo*, *supra,* combine to deprive an accused of his right to a speedy trial, that loss, by definition, occurs before trial.  Proceeding with the trial does not cause or compound the deprivation already suffered.

Id. at 860-61 (citation omitted).

Finally, the Court noted that interlocutory review of a speedy trial claim would frustrate the very right the Speedy Trial Clause of the Sixth Amendment seeks to protect—the timeliness of prosecution.  Id. at 862.  Many defendants, the Court observed, would be willing to tolerate the pre-trial delay occasioned by interlocutory review in the hope of prevailing on a speedy trial claims.  Id. The Court enumerated the problems that would potentially result from permitting interlocutory review of speedy trial claims, stating:

> Among other things, delay may prejudice the prosecution's ability to prove its case, increase the cost to society of maintaining those defendants subject to pretrial detention, and prolong the period during which defendants released on bail may commit other crimes.
>
> Allowing an exception to the rule against pretrial appeals in criminal cases for speedy trial claims would threaten precisely the values manifested in the Speedy Trial Clause.  And some assertions of delay-caused prejudice would become self-fulfilling prophecies during the period necessary for appeal.

Id. (citation omitted).

We agree with the United States Supreme Court's analysis in MacDonald.  Indeed, as the

Court of Criminal Appeals recognized in this case, speedy trial claims in Tennessee ordinarily are raised and reviewed on direct appeal following conviction. The considerations supporting MacDonald's refusal to extend interlocutory review to speedy trial claims are considerations that also appear in Tennessee's procedural rule governing interlocutory appeals. Rule 9(a) provides:

> In determining whether to grant permission to appeal, the following, while neither controlling nor fully measuring the court's discretion, indicate the character of the reasons that will be considered: (1) the need to prevent irreparable injury, giving consideration to the severity of the potential injury, the probability of its occurrence, and the probability that review upon entry of final judgment will be ineffective; (2) the need to prevent needless, expensive, and protracted litigation, giving consideration to whether the challenged order would be a basis for reversal upon entry of a final judgment, the probability of reversal, and whether an interlocutory appeal will result in a net reduction in the duration and expense of the litigation if the challenged order is reversed; and (3) the need to develop a uniform body of law, giving consideration to the existence of inconsistent orders of other courts and whether the question presented by the challenged order will not otherwise be reviewable upon entry of final judgment. Failure to seek or obtain interlocutory review shall not limit the scope of review upon an appeal as of right from entry of the final judgment.

Tenn. R. App. P. 9(a).

Having concluded that the analysis in MacDonald is entirely consistent with the analysis required by Rule 9, we hold that a defendant is not entitled to interlocutory review of a speedy trial claim. The merits of a defendant's speedy trial claim can be best evaluated if raised on direct appeal following a conviction. Indeed, this case well-illustrates that point. Here, the trial court found that the defendant had demonstrated a great deal of anxiety and concern regarding the pending charges. However, the trial court apparently did not hold an evidentiary hearing, for the record contains no proof to support this finding, nor does the record indicate that the anxiety normally occasioned by criminal charges was somehow exacerbated by the delay in this case. Furthermore, although the trial court noted that the defendant was unable to secure release on bail and was incarcerated from October 17, 2002, until December 8, 2003, the trial court was unable to determine whether this period of time was oppressive in light of the overall time it would take to try the case. Similarly, the trial court was unable to determine whether the defendant's ability to mount an adequate defense had been impaired or diminished by the delay. Determining whether delay has impaired a defendant's ability to mount an adequate defense is crucial to the prejudice inquiry, and it is precisely this aspect which interlocutory review cannot well illuminate. Thus, we hold that a defendant is not entitled to interlocutory review of speedy trial claims. Such claims normally must be raised and reviewed on direct appeal following a conviction. We decline therefore to address the merits of the defendant's speedy trial claim.

## V. __Conclusion__

As herein explained, we hold that the Reform Act has not abrogated the common law rule that a principal offender must be convicted before a person alleged to be an accessory after the fact may be tried and convicted. Furthermore, we decline to judicially abrogate the common law rule. Unless a person charged as an accessory after the fact expressly consents to be tried before the principal has been convicted, an accessory after the fact must be tried after or jointly with the principal offender. Finally, we hold that a defendant is not entitled to interlocutory review of a trial court's denial of a motion alleging a Sixth Amendment speedy trial violation. Defendants must raise alleged speedy trial violations on direct appeal following trial and conviction. Applying these holdings, we affirm in part the judgment of the Court of Criminal Appeals and affirm the judgment of the trial court which continued the defendant's trial on the charge of accessory after the fact until after the trial of the principal offender. We remand this case to the trial court for further proceedings consistent with this opinion. It appearing that the defendant is indigent, costs of this appeal are taxed to the State of Tennessee.

_____
FRANK F. DROWOTA III,
CHIEF JUSTICE