# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
April 17, 2012 Session

## STATE OF TENNESSEE v. CHRISTOPHER S. ROBINSON

**Direct Appeal from the Circuit Court for Dickson County**
**No. 22CC-2011-CR-408      Robert E. Burch, Judge**

---

**No. M2011-02556-CCA-R3-CD - Filed June 29, 2012**

---

The defendant, Christopher S. Robinson, appeals the Dickson County Circuit Court's revocation of his probation, arguing that the court erred:  (1) in finding that his due process and speedy trial rights were not violated by the long delay between the filing of the probation violation warrant and the revocation hearing; (2) in finding that he violated the terms of his probation; and (3) in ordering him to serve six months in confinement.  Following our review, we conclude that the twelve-year delay between the filing of the warrant and the revocation hearing, under the facts of this case, violated the defendant's right to a speedy trial.  Accordingly, we reverse the judgment of the circuit court and dismiss the revocation warrant.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Dismissed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ROGER A. PAGE, JJ., joined.

Dan R. Alexander, Nashville, Tennessee, for the appellant, Christopher S. Robinson.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Dan M. Alsobrooks, District Attorney General; and Billy H. Miller, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## <u>FACTS</u>

On April 6, 1999, the defendant pled guilty in the Dickson Municipal Court to driving on a revoked license, for which he was fined $10 and ordered to serve six months in the

county jail, suspended. On June 15, 1999, the defendant's probation officer filed a probation violation warrant alleging that the defendant had violated the terms of his probation by his failure to report to his probation officer and to pay court costs and fees. On June 27, 2011, the defendant was arrested on the 1999 probation violation warrant after being stopped in Nashville for a traffic violation. The probation revocation case was first heard before the Dickson County General Sessions Court, which on July 21, 2011 found the defendant guilty of violating his probation and ordered him to serve ninety days in jail, in forty-eight-hour intervals on the weekends. The defendant then appealed to the Dickson County Circuit Court, which conducted a *de novo* hearing on October 28, 2011.

At the circuit court revocation hearing, the defendant's probation officer, Shannon Monson, testified that the defendant signed a probation order on April 6, 1999. She said she circled and explained to the defendant all the rules on the order that applied to him, which included that he make a full and truthful report to his probation officer in person and/or writing, that he make a court cost payment of $166, which was due on June 8, 1999, and that he pay $8 per week in supervision fees. She could not recall whether the defendant was in jail at the time he pled guilty and signed the probation order. She testified, in fact, that she had no independent recollection of any of the events associated with the case. Her records, however, indicated that she gave him an initial report date of May 3, 1999, which she did not think she would have done had he been incarcerated because it was not her customary practice.

According to Monson's records, the defendant failed to report as scheduled on May 3, 1999. She said she sent him a letter giving him a new report date of May 17, but he also failed to report on that date. She then sent him a final letter giving him a report date of June 7. On June 7, the defendant contacted her office by telephone to reschedule to June 14 due to his moving. When the defendant failed once again to report, she filed the instant probation violation warrant on June 15, 1999. Monson testified that her last contact with the defendant was on June 7, 1999. She said she later learned that the defendant had paid his court costs and fees on February 2, 2007. She stated that she never excused him from his obligation to report or gave him any indication that his probation was going to be supervised through the county probation office. Monson apparently read from the probation order during her testimony, but the order itself was never introduced into the record.

On cross-examination, Monson testified that the efforts she made to communicate with the defendant, prior to issuing the warrant, consisted of the two letters she sent him. She made no effort to communicate with him after the warrant was issued because she had 500 people on probation and could not afford the time "to continue to hunt them down." She stated that there would not have been anything in the court clerk's file to indicate that the defendant had an outstanding probation revocation warrant.

The defendant testified that he was in the county jail on another charge at the time he appeared in the Dickson Municipal Court, shackled, handcuffed, and dressed in jail orange, to enter his guilty plea to driving on a revoked license. After entering his plea, he was taken back to the county jail, where he served ninety days before being released. Afterwards, he complied with all the terms and conditions of his county probation, having his stepfather drive him to and from his meetings with his county probation officer. The defendant said he never received a copy of the probation order in the instant case and did not realize that he was being placed on probation in city court or that he had any additional obligations to fulfill in the case. He stated that he did not learn that he still owed court costs and fines in the case until 2007 when he attempted to get his license reinstated. After learning of the obligation, he went to the Dickson Municipal Court Clerk's Office and paid the $166 that he owed.

The defendant testified that he later went back to city court to clear up a violation of a protective order that was on his record, which was preventing him from obtaining a handgun carry permit. At that time, he inquired if he still owed any court costs and fines and the clerk informed him that he was "clear" and that his balance was zero. The defendant said that he did not learn of his outstanding probation violation warrant until June 2011 when he was pulled over for speeding in Nashville and was arrested on the basis of the probation violation warrant.

On cross-examination, the defendant acknowledged that the "Probation Order" in the case contained his signature. He said he recalled signing a paper for Ms. Monson while he was in court entering his guilty plea, but he insisted that he did not know that he was being placed on probation in the case. He also said that he did not recall having telephoned Ms. Monson to reschedule an appointment but that it was possible he had done so. He stated that he moved to Nashville to live with his stepfather following his release from jail and that he never contacted Ms. Monson to let her know his new address. He thought, however, that his ex-wife might have done so, as he "had a lot of cases." He also conceded that, based on the paperwork, he must have gone to Dickson County General Sessions Court, rather than Dickson Municipal Court, to inquire about the violation of the order of protection charge that was preventing him from obtaining a handgun carry permit.

On redirect examination, the defendant testified that it would have been easier to take care of his probation obligations at the time he pled guilty and that he would have done so had he realized that he was on probation in city court as well as general sessions court. He further testified that he had since obtained his GED and journeyman's electrical license and become employed as an electrician for Matrix Electric. In addition, other than his 2011 speeding ticket, he had committed no new violations of the law in the past eleven years.

Shannon Monson, recalled as a witness for the State, reiterated that her usual practice when a defendant placed on probation was in jail was to make a notation to that effect in her intake file, which she did not do in this case. In addition, her office kept a running log of all their defendants who were in jail, and she would have made notations in her file each week as to the defendant's ongoing jail status had he been in jail at the time she received his case. She also said that she presumed that the defendant was the one who called her office on June 7, 1999, to reschedule his appointment because she made no notation in her file of someone else having placed the call on his behalf, as was her usual practice. Instead, she merely wrote, "rescheduled appointment due to moving." On cross-examination, she acknowledged it was possible that she had made mistakes in her notes.

Dickson County Sheriff's Department Deputy Anita Kimbroe, who worked in jail administration, testified that she had searched the jail's computer system for the dates of the defendant's incarceration in the jail. According to her hand-copied records, the defendant was released from jail on March 13, 1999, and was not re-incarcerated until August 17, 2000.

The defendant, testifying in rebuttal, said that, although his memory was "terrible," he specifically recalled his cousin's having picked him up upon his release from jail on October 1, 1999, because it was the day before the cousin's wedding. On cross-examination, he conceded that he had served a violation of probation sentence in the Dickson County Jail from September 8 to October 6, 2000. He was unresponsive when asked if he might be mistaken about the year in which his cousin got married and picked him up from the jail.

At the conclusion of the hearing, the trial court found that the defendant violated the terms of his probation by his failure to report to his probation officer. The court further found that the defendant's right to a speedy trial was not violated by the delay in the case. In reaching this conclusion, the court found that, although the delay was very long, it was not attributable to the State's negligence because the defendant had moved from the area and his location "was difficult to ascertain." The court further found that the State was more prejudiced by the delay than was the defendant. Specifically, the court found that the probation officer could not be expected to remember the details of the case after so many years but that the defendant should have been able to recall whether or not he was shackled at the time he entered his plea, that the events could not have transpired as the defendant described, and that the defendant was untruthful in his testimony. The court, therefore, revoked the defendant's probation and ordered that he serve his six-month sentence in confinement. This appeal followed.

## ANALYSIS

The defendant argues on appeal that the trial court erred in finding that his rights to

due process and a speedy trial were not violated by the long delay in the prosecution of the case, in finding that he violated the terms of his probation, and in ordering that he serve six months in confinement.

The right to a speedy trial is designed "to protect the accused against oppressive pre-trial incarceration, the anxiety and concern due to unresolved criminal charges, and the risk that evidence will be lost or memories diminished." State v. Utley, 956 S.W.2d 489, 492 (Tenn. 1997) (citing Doggett v. United States, 505 U.S. 647, 654 (1992)). A probation revocation proceeding falls within a defendant's constitutional right to a speedy trial. See Allen v. State, 505 S.W.2d 715, 719 (Tenn. 1974). In determining whether the defendant's right to a speedy trial was violated, a court considers the following four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice caused to the defendant by the delay. See State v. Bishop, 493 S.W.2d 81, 83-84 (Tenn. 1973) (citing Barker v. Wingo, 407 U.S. 514 (1972)).

Any delay of more than one year is considered "presumptively prejudicial" and is enough to trigger consideration of the remaining three factors. Barker, 407 U.S. at 530; Utley, 956 S.W.2d at 494. Moreover, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex [felony] charge." Barker, 407 U.S. at 530-31. The remedy for the denial of a speedy trial is dismissal of the charges. Strunk v. United States, 412 U.S. 434, 439 (1973). Whether a defendant has been denied his right to a speedy trial is a mixed question of law and fact and, therefore, reviewed under a *de novo* standard. See State v. Hawk, 170 S.W.3d 547, 549 (Tenn. 2005); State v. John Wesley Wright, No. M2011-00436-CCA-R3-CD, 2011 WL 5326282, at *8 (Tenn. Crim. App. Nov. 4, 2011); State v. Rickey E. Hutchings, No. M2008-00814-CCA-R3-CD, 2009 WL 1676057, at *5 (Tenn. Crim. App. June 16, 2009); State v. John William Matkin, III, No. E2005-02701-CCA-R3-CD, 2007 WL 120048, at *5 (Tenn. Crim. App. Jan. 18, 2007).

We first consider the length of the delay. More than twelve years elapsed from the filing of the revocation warrant and the time it was served on the defendant. This lengthy delay in a case involving mere technical violations of a probationary sentence in a misdemeanor case weighs heavily against the State and is more than sufficient to trigger an analysis of the remaining factors in the speedy trial violation inquiry.

The second factor "generally falls into one of four categories: (1) intentional delay to gain a tactical advantage over the defense or delay designed to harass the defendant; (2) bureaucratic indifference or negligence; (3) delay necessary to the fair and effective prosecution of the case; and (4) delay caused, or acquiesced in, by the defense." State v. Wood, 924 S.W.2d 342, 346-47 (Tenn. 1996) (footnotes omitted).

The trial court held the defendant responsible for the delay, finding that, although there was no evidence that he was actively evading prosecution, his "circumstances" of living with his stepfather in Nashville "rendered him difficult to find." The State agrees, asserting that "the reason for the delay in this case was the disappearance of the defendant and the lack of knowledge by the police as to the defendant's whereabouts." There was no evidence, however, that the police made any attempts to find the defendant during the years that elapsed after the filing of the warrant. Moreover, the defendant had proof that he returned to the Dickson City Court Clerk's Office in 2007 to pay his court costs and fees, without being informed of the outstanding probation revocation warrant. The defendant also was able to obtain a concealed handgun carry permit, a copy of which was included as an exhibit at the revocation hearing, without triggering any notice of the outstanding revocation warrant. We, therefore, conclude that the delay falls under the category of bureaucratic indifference and, thus, weighs against the State.

As for the third factor, "an accused who is unaware that charges are pending against him or her, as is often the case where an indictment has been sealed and not served, cannot be penalized for his or her failure to assert the speedy trial right." State v. Wood, 924 S.W.2d 342, 351 n.13 (Tenn. 1996) (citations omitted). Although there is no motion to dismiss in the record, the transcript of the revocation hearing and the trial court's written order revoking probation reveals that the defendant asserted his right to a speedy trial from the beginning of the hearing. This factor, therefore, also weighs in favor of the defendant.

Finally, we consider whether the defendant was prejudiced by the delay. This is the most important factor in the speedy trial analysis, and when evaluating this factor we must keep in mind that the right to a speedy trial "is designed: (1) to prevent undue and oppressive incarceration prior to trial; (2) to minimize anxiety and concern accompanying public accusation; and (3) to limit the possibilities that long delay will impair the defense." State v. Simmons, 54 S.W.3d 755, 760 (Tenn. 2001) (citing Doggett, 505 U.S. at 654-55).

As a result of the delay, the defendant suffered neither undue and oppressive incarceration nor anxiety and concern accompanying public accusation. However, the excessive delay between the filing of the warrant and the hearing unquestionably prejudiced him by seriously impairing his ability to present a defense. We also note that the long delay rendered the revocation of his probation and reinstatement of his original sentence more onerous than it would have been had it occurred twelve years earlier, as the defendant, during the intervening time, was able to train and secure employment as an electrician and, apparently, build a life as a law-abiding citizen.

Having found that all four factors weigh in the defendant's favor, we conclude that the defendant's right to a speedy trial was violated. We, therefore, reverse the judgment of

the trial court revoking the defendant's probation and dismiss the revocation warrant.

## **CONCLUSION**

We conclude that the defendant's right to a speedy revocation hearing was violated by the twelve years that elapsed between the filing of the revocation warrant and the revocation hearing.  Accordingly, we reverse the judgment of the trial court and dismiss the revocation warrant.

_____
ALAN E. GLENN, JUDGE