IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 3, 2017

IN RE A.L.H., ET AL.

**Appeal from the Circuit Court for Wayne County**
**No. 4678      Stella L. Hargrove, Judge**

_____

**No. M2016-01574-COA-R3-JV**

_____

This is an appeal from an order finding two children of S.B. (mother) and R.H. (father) to be the victims of severe child abuse in the couple's care and control. On July 24, 2015, the Department of Children's Services (DCS) received a referral alleging, in part, that the parties' three children, A.L.H., A.G.B., and A.R.B. (collectively the children), were drug-exposed. On August 27, 2015, the children underwent hair follicle drug testing. A.G.B. and A.R.B. tested positive for methamphetamine. A.L.H. was negative for all substances. On September 23, 2015, DCS filed a petition to declare the children dependent and neglected. Mother and father stipulated that the children were dependent and neglected, but they expressly did not agree with the finding of severe child abuse. The Juvenile Court for Wayne County (the juvenile court) entered an order finding A.G.B. and A.R.B. to be the victims of severe abuse. Mother and father appealed to the Circuit Court for Wayne County (the trial court). On July 14, 2016, the trial court entered an order finding A.G.B. and A.R.B. to be the victims of severe child abuse in the care and control of mother and father. Mother and father appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which W. NEAL MCBRAYER and ARNOLD B. GOLDIN, JJ., joined.

Teresa Brewer Campbell, Lawrenceburg, Tennessee, for the appellant, S.B.

Amy Long Schisler, Waynesboro, Tennessee, for the appellant, R.H.

Herbert H. Slatery III, Attorney General and Reporter, and Kathryn A. Baker, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

# OPINION

## I.

Mother and father were never married. They had three children together. On July 24, 2015, DCS received a referral alleging that the children suffered from drug exposure, lack of supervision, and environmental neglect. With respect to drug exposure, the referral alleged that the parents were cooking and using methamphetamine. Additionally, it was alleged that A.R.B. had grabbed a hot meth pipe and burned her hand. Following its investigation, DCS classified the lack of supervision and environmental neglect as unsubstantiated. On July 28, 2015, DCS investigator Erica Prince located the parents and screened them for drugs. Both parents tested positive for opiates. On August 27, 2015, DCS collected hair follicle samples from the children for drug testing. A.G.B. and A.R.B. tested positive for methamphetamine. However, A.L.H. was negative for all substances. At the time of the tests, A.G.B. was nineteen months old, and A.R.B. was five months old.

On September 23, 2015, DCS filed a petition to declare the children dependent and neglected. Mother and father stipulated that the children were dependent and neglected, but they reserved the issue of severe child abuse. Because father had been arrested on domestic violence charges and was under a no contact order with respect to mother and the children, the children remained in mother's custody. Mother retained custody of the children on the condition that she cooperated with DCS and complied with all court orders. Furthermore, DCS required that mother remain in a domestic violence shelter.

On October 6, 2015, father tested positive for hydrocodone and methamphetamine. At trial, father alleged that he tested positive for methamphetamine because he had taken cough medicine. On October 13, 2015, without permission from DCS, mother left the domestic violence shelter with the children. On October 22, 2015, DCS located mother and the children, and the juvenile court entered an order placing custody of the children with DCS. That day, mother tested positive for opiates. On November 13, 2015, the children were drug tested a second time, and each of the children was negative for all substances tested.

On May 20, 2016, the juvenile court entered an order finding that A.G.B. and A.R.B. were the victims of severe abuse. Mother and father appealed to the trial court. On June 13, 2016, the trial court entered an order finding clear and convincing evidence that A.G.B. and A.R.B. were the victims of severe child abuse in the care of or under the control of mother and father based upon A.G.B. and A.R.B.'s exposure to drugs. Mother and father appeal.

**II.**

Mother raises the following issues, as paraphrased from her brief:

Whether the trial court erred in finding that mother exposed the children to methamphetamine;

Whether the trial court erred in finding clear and convincing evidence of severe abuse without evidence to prove whether A.G.B. and A.R.B were exposed to methamphetamine other than by skin contact with someone who had used methamphetamine, how much exposure to methamphetamine they had, or the level of or duration of the exposure to methamphetamine;

Whether the trial court erred in finding severe abuse when the state failed to articulate the injury to A.G.B. and A.R.B. that rises to the level of severe bodily injury or death;

Whether the trial court erred in finding severe abuse when the state failed to prove causation between the drug exposure and the likelihood of severe bodily injury or death;

Whether clear and convincing evidence supports a finding of severe child abuse when A.L.H. did not test positive for methamphetamine.

Father raises the following issue:

Whether clear and convincing evidence supports the trial court's finding that father committed severe child abuse against A.G.B. and A.R.B. by the exposure to methamphetamine (1) when there is no evidence of the manufacture of methamphetamine; (2) when there is no expert testimony to show the likelihood of serious bodily injury from exposure to methamphetamines by determining the levels of methamphetamine in the child's system, the duration of the exposure, and the effects of the exposure to methamphetamines; and (3) when there was no expert testimony as to what the alleged serious bodily injuries were that were likely to have been caused by the exposure to methamphetamine.

## III.

When, as here, the trial court sits without a jury, we review de novo the trial court's findings of fact in the record with a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). We review a trial court's conclusions of law under a de novo standard but with no presumption of correctness attaching to the trial court's legal conclusions. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

With respect to severe child abuse, we are guided by the following:

> Severe child abuse in a dependency and neglect proceeding must . . . be established by clear and convincing evidence. "Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." The evidence should produce a firm belief of conviction as to the truth of the allegations sought to be established. "In contrast to the preponderance of the evidence standard, clear and convincing evidence should demonstrate that the truth of the facts asserted is 'highly probable' as opposed to merely 'more probable' than not."

*In re S.J.*, 387 S.W.3d 576, 587 (Tenn. Ct. App. 2012) (internal citations omitted).

## IV.

### A.

Tenn. Code Ann. § 37-1-102(b)(22)[1] defines "severe child abuse" to include the following:

> (A)(i) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death;

---

[1] On July 1, 2016, Tenn. Code Ann. § 37-1-102 (b) was amended, causing the definition of "severe child abuse" to be renumbered from subsection (21) to (22).

- 4 -

(ii) "Serious bodily injury" shall have the same meaning given in § 39-15-402(d).

This Court has found that a parent's conduct is "knowing" and a parent acts "knowingly" when " . . . [the person] 'has actual knowledge of the relevant facts and circumstances or when . . . [the person] is either in deliberate ignorance of or in reckless disregard of the information that has been presented to . . . [the person].' " *In re H.L.F.*, 297 S.W.3d 223, 235 (Tenn. Ct. App. 2009) (quoting *In re R.C.P.*, No. M2003-01143-COA-R3-PT, 2004 WL 1567122 at, *7 (Tenn. Ct. App., filed July 13, 2004)).

Tenn. Code Ann. § 39-15-402(d) provides the following:

> "Serious bodily injury to the child" includes, *but is not limited to*, second- or third-degree burns, a fracture of any bone, a concussion, subdural or subarachnoid bleeding, retinal hemorrhage, cerebral edema, brain contusion, injuries to the skin that involve severe bruising or the likelihood of permanent or protracted disfigurement, including those sustained by whipping children with objects.

(Emphasis added.)

Tenn. Code Ann. § 37-1-101(a)(1) provides that one public purpose to be effectuated by the construction of the provisions governing juvenile court proceedings is to "[p]rovide for the care, protection, and wholesome moral, mental and physical development of children coming within its provisions[.]" "The statutory scheme affording protection to juveniles, Tenn. Code Ann. §§ 37-1-101, et seq. . . . , unmistakably contemplates intervention based upon present conduct to prevent future injury, as well as consequences for past conduct that has caused a present injury or is likely to cause a future injury." *In re Benjamin M.,* 310 S.W.3d 844, 848 (Tenn. Ct. App. 2009).

**B.**

The trial court made the following findings with respect to severe child abuse:

> [S]ometime within a 90 day period prior to the first [drug] test on August 27, 2015, the two children who tested positive, [A.G.B.] and [A.R.B.], were exposed to methamphetamine.
>
> During this time, or clearly during a portion of this time, [father] and [mother] were living together with the children.

The children were infants; therefore, someone had to expose the children to methamphetamine.

Both [mother] and [father] knew, or should have known, that [mother's] mother, was using methamphetamine, but allowed the children to stay with her. Other than [father's] sister, no other adult person was named as a caregiver for the children. There is nothing in the record to indicate [father's] sister was a drug user.

[Mother] knew of the trial date and failed to appear when her children's lives were at stake.

The Court is concerned that both [mother] and her mother are methamphetamine users.

[Mother] admits she has a drug problem and has tested positive for opiates.

[Father] has tested positive for opiates, hydrocodone and methamphetamine.

[Father] blames everything on DCS and [mother]. [Father] is not a credible witness.

Based on these findings, the court found clear and convincing evidence that A.G.B. and A.R.B. are the victims of severe child abuse in the care and control of mother and father.

### V.

The trial court made a finding of severe abuse based upon the exposure of A.G.B. and A.R.B. to methamphetamine. Mother and father challenge the finding and holding of the trial court that the drug-exposed children were the victims of severe abuse. They correctly point out that there is no proof A.G.B. and A.R.B. were affected by prenatal exposure to illicit drugs. However, it is disingenuous to suggest that, while prenatal exposure constitutes severe abuse, postnatal exposure does not. The fact that the child is exposed to drugs after birth does not make the parents any less accountable for their actions toward their children. It does not diminish the abuse or failure to protect the child. To hold otherwise would thwart the purpose of the statutes protecting juveniles. The public purpose in Tenn. Code Ann. § 37-101(a)(1) of "[p]rovid[ing] for the care, protection, and wholesome moral, mental and physical development of children" would not be furthered if we did not protect all drug-exposed children, regardless of whether the

drug exposure was before or after birth. Children are entitled to a life free from the harmful effects of exposure to drugs. The evidence does not preponderate against the trial court's finding by clear and convincing evidence that A.G.B and A.R.B. were the victims of severe child abuse based upon their exposure to illicit drugs.

## VI.

### A.

In her brief, mother claims that the trial court erred in finding that she exposed A.G.B. and A.R.B. to methamphetamine. The court, however, did not find that mother exposed the children to methamphetamine. The court found that someone exposed the children to drugs but did not specifically find that it was mother. The trial court found that mother's mother was using methamphetamine and that mother allowed A.G.B. and A.R.B. to stay with her. During the time that the children were in mother's care, A.G.B. and A.R.B. were exposed to methamphetamine.

Mother argues that she never tested positive for methamphetamine. She points out that father was the only person who testified regarding her use of this particular drug. Mother's drug use is not the main focus in this case. What is clear beyond any doubt is that A.G.B. and A.R.B. were exposed to methamphetamine while under mother's care. Tenn. Code Ann. § 37-1-102(b)(22)(A)(i) places an obligation on parents to protect their children from abuse. When a parent knowingly fails to intervene when a child is being exposed to drugs, that failure constitutes severe child abuse due to the failure to protect the child. *See **In re Hailey S.***, No. M2016-00387-COA-R3-JV, 2016 WL 7048840, at *9 (Tenn. Ct. App., filed December 5, 2016). Whether mother exposed the children to drugs or she allowed her mother or someone else to expose the children, as the trial court found, she failed to protect A.G.B. and A.R.B. from exposure to drugs.

### B.

Mother also argues that the trial court erred in finding severe child abuse when it did not have evidence of the method of exposure or level of exposure of the children to methamphetamine. In his brief, father also argues that "the Court cannot determine by clear and convincing evidence who exposed the children to methamphetamines, when the children were exposed to methamphetamines, where the children were exposed to methamphetamines or how the children were exposed to methamphetamines." We are not persuaded by this argument. The critical fact is that A.G.B. and A.R.B. tested positive for methamphetamine. It is not the level of drugs in a child's system that is important, it is the fact that the children were exposed to drugs. This issue does not turn on the method or level of exposure of the child to drugs. As this Court stated in ***In re M.J.J.***, "the healthy development of the child . . . does not diminish the severity of the harm to which the child was exposed." No. M2004-02759-COA-R3-PT, 2005 WL

- 7 -

873305, at *8 (Tenn. Ct. App., filed April 14, 2005). It is the exposure of the child to harm that matters, not the method or level of exposure.

## C.

Mother and father argue that DCS failed to articulate an injury that rises to the level of severe bodily injury or death. Mother claims that DCS failed to prove causation between drug exposure and the likelihood of injury. Mother asserts that there was no expert testimony that the drug exposure could cause serious bodily injury or death. Furthermore, she claims that there was no proof or expert testimony regarding the likelihood of serious bodily injury or death. These arguments are without merit.

Tenn. Code Ann. § 37-1-102(b)(22)(B) specifically requires the opinion of a qualified expert that one of the listed conditions is present or would likely be present as a result of the abuse or neglect. The trial court did not rely upon this code section to support its decision. Rather, it found severe child abuse as defined by Tenn. Code Ann. § 37-1-102(b)(22)(A)(i). That provision does not explicitly require the opinion of a qualified expert. Furthermore, that provision does not require a specific injury. Rather, it requires the exposure of a child to or failure to protect a child from serious bodily injury or death. Tenn. Code Ann. § 39-15-402(d) provides that severe child abuse "includes, but is not limited to" certain conditions. Accordingly, severe child abuse is not limited to those conditions. Thus, under the relevant statute, there is no language requiring that an expert opinion is needed or that a specific condition would likely result from the abuse or neglect.

The Supreme Court has stated the following:

> In discerning legislative intent, we may employ the principle of "expressio unius est exclusio alterius, [which] provides 'that where the legislature includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that the legislature acted purposefully in the subject included or excluded.' "

*In re Kaliyah S.*, 455 S.W.3d 533, 554 (Tenn. 2015) (quoting *State v. Pope*, 427 S.W.3d 363, 368 (Tenn. 2013)). "[C]ourts must attempt to give effect to the legislative purpose and intent of a statute, as determined by the ordinary meaning of its text, rather than seek to alter or amend it." *State v. Hawk*, 170 S.W.3d 547, 551 (Tenn. 2005).

Because the legislature requires an expert opinion to find severe child abuse under Tenn. Code Ann. § 37-1-102(b)(22)(B) but does not in Tenn. Code Ann. § 37-1-102(b)(22)(A), we presume that the legislature purposefully excluded an expert opinion in that latter definition. Accordingly, mother's claim that there was no expert opinion is

not relevant to the finding of severe child abuse. Additionally, the express language in Tenn. Code Ann. § 39-15-402(d) does not limit serious bodily injury to the listed conditions and does not require a finding of specific harm. This Court has repeatedly held that exposure of a child to drugs constitutes severe child abuse. Mother's argument that there must be a specific injury alleged rising to the level of severe bodily injury or death to find severe child abuse is incorrect.

## D.

Mother raises the issue of whether there is clear and convincing evidence that A.G.B. and A.R.B. were the victims of severe abuse when their sibling, A.L.H., did not test positive for drugs. Mother, however, fails to explain how this is relevant. Rather, she simply claims that, if she and father were using methamphetamine, all of the children should have tested positive. Mother's argument fails to demonstrate how A.L.H.'s negative drug test has any bearing on the drug exposure of A.G.B. and A.R.B. and a finding that they were the victims of severe child abuse. A.G.B. and A.R.B. were the victims of severe child abuse due to drug exposure, regardless of whether A.L.H. also tested positive for drugs.

## E.

Father claims that the court lacked clear and convincing evidence of severe child abuse because there was no evidence of the manufacture of methamphetamine. This argument is without merit. Tenn. Code Ann. § 37-1-102(b)(22)(D) defines severe child abuse as "allowing a child to be present within a structure where the act of creating methamphetamine . . . is occurring." The trial court, however, did not find severe child abuse under that definition.

## VII.

The judgment of the trial court is affirmed. The costs on appeal are assessed to S.B. and R.H. This case is remanded for enforcement of the trial court's judgment and for collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE