# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 13, 2016

## STATE OF TENNESSEE v. NICHOLAS COLE

### Appeal from the Circuit Court for Wayne County
### Nos. 15493, 15581   Stella L. Hargrove, Judge

_____

### No. M2015-02286-CCA-R3-CD – October 18, 2016
_____

Nicholas Cole ("the Defendant") pled guilty to fifteen counts of theft of property valued at $500 or less and eighteen counts of burglary of an automobile. Following a sentencing hearing, the trial court imposed an effective sentence of fifteen years' incarceration. In this delayed direct appeal, the Defendant contends that the trial court improperly sentenced him to serve partially consecutive sentences, erred in sentencing him to continuous confinement, erred in denying probation, and erred in imposing an excessive sentence. Upon a thorough review of the record below and applicable law, we affirm the trial court's order as to the length of the Defendant's sentences, the partial consecutive sentence alignment, and the denial of probation, but reverse the trial court's order of continuous confinement for his convictions of "burglary of an auto," a specifically enumerated non-violent property offense in Tennessee Code Annotated section 40-35-122(c)(18). We remand for resentencing consistent with Tennessee Code Annotated section 40-35-122(a) and section 40-35-104(c).

## Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

M. Wallace Coleman, Jr. (on appeal), Lawrenceburg, Tennessee, and Amy Long Schisler (at plea and sentencing), Waynesboro, Tennessee, for the appellant, Nicholas Cole.

Herbert H. Slatery III, Attorney General and Reporter; Sophia Lee, Senior Counsel; Mike Bottoms, District Attorney General; and Beverly White, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. Factual and Procedural Background

*Guilty Plea Proceedings*

The Defendant entered an open guilty plea to fifteen counts of theft of property valued at $500 or less, a Class A misdemeanor, and eighteen counts of burglary of an automobile, a Class E felony, on May 19, 2014. At the guilty plea hearing, the State offered the following factual basis for the plea:

> Judge, it was Mr. Cameron Cole, -- it's alleged that Mr. Cameron Cole, [the Defendant], and Wynona Cole, and I believe there was one other individual with them, who came to Wayne County.
>
> Ms. Wynona Cole was driving the car. She parked at I believe it was one of the apartment -- Village Apartments, while [the Defendant] and Mr. Cameron Cole went into the area, the different complexes and broke into [eighteen] different motor vehicles and stole from [fifteen] of them.
>
> From my understanding, all the property that was stolen was recovered. And I'm not sure about the damages, actually. It's -- about the damages to the vehicles, but we can address that with the victims.

The State confirmed that all the crimes occurred on the same offense date—October 14, 2013, at approximately 2:30 a.m.

*Sentencing Hearing*

At a subsequent sentencing hearing, the trial court admitted the Defendant's presentence report as an exhibit. Eugene Michonski, a probation officer with the Tennessee Department of Correction, Probation and Parole Division, testified that he interviewed the Defendant to compile the presentence report. Defendant stated that his brother, co-defendant Cameron Cole, asked for his help to obtain money. Additionally, the Defendant informed Officer Michonski that, after breaking into the first vehicle, he got an "adrenaline rush" and "just began hitting more vehicles." Officer Michonski also testified that the Defendant had graduated from high school and had obtained a certificate in industrial electricity from Tennessee Technology School.

- 2 -

Officer Michonski then read the following statement, which the Defendant had given to Investigator Chris Littrell:

> On Monday morning, approximately 2:30 A.M., me [sic] and [Cameron Cole] along with Wynona Cole and Caroline Huelin . . . went to Waynesboro. Wynona [Cole] drove to the Village Apartments and parked.
>
> Me [sic] and Cameron [Cole] told the girls to sit and wait for us until we [got] back.
>
> Cameron [Cole] and I then went to Waynedale Subdivision and began getting into cars, trying to get cash. We couldn't find any cash, so we decided to start taking anything we . . . thought we might be able to sell.
>
> We took GPS's, laptops, cameras, a nine millimeter gun, and a bunch of other things. I'm not sure what all we got, but we brought four bags of items back.[1]

Officer Michonski then related statements from several victims. Shirley Butler was upset and angry about her loss of a car tool that was a gift to her. Lisa Garrison had to hire a locksmith to replace the ignition in her car because her car key would not fit after her car was burglarized. Larry Keaton was "very angry to find out that someone came on [his] property, while [he and his family] were asleep, and broke into [his] vehicle, invading [his] privacy and personal belongings." Susan Perry stated that it was "very scary" to think that someone had broken into her vehicle while she was in her house. Ms. Perry also stated:

> I have thought many times about what would they have done if I had walked outside. Would they have run? Would they have assaulted me? I knew that they were not scared or they would not have rummaged through all the vehicles in the neighborhood. If they had needed something, they should have asked.

Molly Wilson stated she was hurt by the burglary of her car because she "live[d] in a quiet area, where nothing happens." Angela Wenzel stated that the crimes made the residents in the neighborhood feel uneasy about living there.

In an allocution statement, the Defendant said that he "would like to sincerely apologize to the victims of [his] actions" and that he had "caused them nothing but grief

---

[1] The State charged Cameron Cole and Wynona Cole as co-defendants in this case.

and hardship." The Defendant told the trial court that "if given the chance, [he] would stay out of trouble, and take care of [his] family, and abide by the laws." The Defendant stated that he hoped to go back to school "to do something in child psychology and help kids stay out of jail and off the streets" and that he planned on opening his own business.

At the conclusion of proof, the trial court stated that it had considered:

[A]ll the evidence presented at the sentencing hearing; the pre-sentence report; general princip[les] of sentencing; arguments[] as to sentencing alternatives; the nature and characteristics of the criminal conduct involved; mitigating and enhancement factors; statistical information provided by the Administrative Office of the Courts[] as to sentencing practices for similar offenses committed in Tennessee; the statement of the Defendant . . . ; and his potential for rehabilitation or treatment.

The trial court noted that the Defendant, who was then twenty-five years old, had "been in trouble ever since age [nineteen] in Circuit Court" and that the Defendant had previously been convicted of ten misdemeanors. Additionally, the trial court noted that the Defendant had violated probation on a previous offense and had been ordered to serve his sentence of eleven months and twenty-nine days. The trial court also considered that the Defendant had graduated high school and had obtained a certificate in industrial electricity, had good physical and mental health, and was not taking any medications. The trial court stated that the Defendant had "no problem with drugs," that he drank beer on occasion, that his longest employment was for two months, and that he had received a less than honorable discharge from the United States Navy in lieu of a court martial after serving from November 2010 to July 2011.

The trial court found that the Defendant had "a previous history of misdemeanor convictions, as well as a history of criminal behavior, in addition to those necessary to establish the appropriate range . . . ." The trial court also found that the Defendant was "a leader in the commission of an offense involving two or more criminal persons" and that the Defendant had "a previous history of unwillingness to comply with the conditions of a sentence involving release in the community." The trial court declined to consider "that [the] Defendant was motivated by a desire to provide necessities for his brother's family or anybody else, or that he assisted the authorities in recovering the property he stole." The trial court stated that while the Defendant's criminal conduct did not cause serious bodily injury to the victims, his conduct "could have threatened serious bodily injury[.]" The trial court considered, as a "possible" mitigating factor, that the Defendant's criminal conduct did not cause serious bodily injury to any of the victims.

The trial court next considered the Defendant's "previous actions and character" and noted that the Defendant had been on a crime "spree" before he committed the underlying offenses. The trial court also found that there was a "great possibility, based upon [the Defendant's] prior record, . . . prior criminal history, and conduct" that "a period of probation will certainly put the Defendant in a position to commit another crime." In considering "whether or not the interests of society are being protected from possible future criminal conduct," the trial court noted that it was "concerned about multiple victims of [the] Defendant and [that this was] his second spree of auto burglaries." The trial court then found that a sentence of full probation "clearly would . . . unduly depreciate the seriousness of the offenses . . . ." The trial court also found that "confinement [was] worthy of consideration to provide an effective deterrent." The trial court noted that the Defendant stated that he had accepted responsibility for his actions, but the Defendant had also stated that "[his] brother was about to lose his vehicle . . . so [the Defendant] had to go steal."

The trial court sentenced the Defendant to eleven months and twenty-nine days for each of the fifteen counts of theft under $500 and to one and one-half years for each of the eighteen counts of auto burglary. The trial court ordered that the misdemeanor theft convictions run concurrently with each other and with the auto burglary convictions. The court further ordered that eight of the auto burglary convictions would run concurrently with each other, while the remaining ten auto burglary convictions would run consecutively to each other. The trial court sentenced the Defendant to serve his total effective sentence of fifteen years in the Department of Correction.

The trial court stated that it ordered consecutive sentencing because it was "concerned with the lack of work history of [the Defendant] and his words that if somebody in his family needs something, you steal." The trial court found that the Defendant was a "professional criminal who has knowingly devoted his life, thus far, to criminal acts as a major source of his livelihood." The trial court also found that an "extended sentence [was] necessary to protect society against further criminal conduct, particularly stealing on the part of [the] Defendant" and that consecutive sentencing was "reasonably related to the severity of the offense committed with this second spree of auto burglary and [the Defendant's] statements." No direct appeal was filed following the entry of the judgments of conviction.

*Post-Conviction Proceedings*

On December 9, 2014, the Defendant filed a timely pro se petition for post-conviction relief, alleging that trial counsel was ineffective in failing to file a timely appeal following sentencing. Mr. Coleman was appointed to represent the Defendant in the post-conviction proceeding. The judge in the post-conviction proceeding, J. Russell

Parkes, entered an order on October 28, 2015, finding that "the [D]efendant was denied his right to an appeal after an open plea and sentencing by the court." The post-conviction court granted this delayed direct appeal and appointed Mr. Coleman to represent the Defendant on appeal.

## II. Analysis

### *Standard of Review*

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210; State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103 (2014).

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c)(1)-(2) (2014).

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2014); Bise, 380 S.W.3d at 706. However, "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." Bise, 380 S.W.3d at 705-06. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2014), Sentencing Comm'n Cmts.

### Consecutive Sentencing

The Defendant first asserts that the trial court improperly ordered consecutive sentencing based upon a finding that he is a professional criminal who has knowingly devoted his life to criminal acts as a major source of livelihood. The Defendant contends that there is no evidence that he stole every time he or a family member needed money or that he "devoted his life, thus far, to criminal acts as a major source of livelihood." The State argues that the trial court's order of consecutive sentencing is presumptively reasonable and that the trial court did not abuse its discretion in ordering consecutive sentencing.

The Tennessee Supreme Court has expanded the standard of review in Bise to trial courts' decisions regarding consecutive sentencing. State v. Pollard, 432 S.W.3d 851, 859 (Tenn. 2013). "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." Id. at 862 (citing Tenn. R. Crim. P. 32(c)(1); Bise, 380 S.W.3d at 705). However, when the trial court "fails to provide adequate reasons on the record for imposing consecutive sentences, the appellate court should neither presume that the consecutive sentences are reasonable nor defer to the trial court's exercise of its discretionary authority." Pollard, 432 S.W.3d at 863-64. In such situations, this court may "(1) conduct a de novo review to determine whether there is an adequate basis for imposing consecutive sentences; or (2) remand for the trial court to consider the requisite factors in determining whether to impose consecutive sentences." Id. at 864 (citing Bise, 380 S.W.3d at 705 & n.41).

- 7 -

Tennessee Code Annotated section 40-35-115 sets forth seven different situations in which a trial court has the discretion to impose consecutive sentencing, including when "[t]he defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood . . . ." Tenn. Code Ann. § 40-35-115(b)(1). This court has previously held that "[w]hile the amount of income derived from illegal acts may be significant, it is not determinative. Only a 'major source of livelihood or . . . a substantial income or resources not shown to be derived from . . . other than criminal activity' is required" to establish the need for consecutive sentencing under the "professional criminal" ground. State v. Roscoe C. Smith, No. 01C01-9502-CR-00031, 1995 WL 599012, at *4 (Tenn. Crim. App. Oct. 12, 1995) (quoting Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976)) (alterations in original).

In ordering consecutive sentencing based upon its finding that the Defendant was a professional criminal, the trial court noted that it was "primarily concerned with the lack of work history of [the Defendant] and his words that if somebody in his family needs money, you steal." In addition, the trial court found that "an extended sentence [was] necessary to protect society against further criminal conduct, particularly stealing on the part of [the] Defendant" and that consecutive sentencing was "reasonably related to the severity of the offense[s] committed with this second spree of auto burglary and [the Defendant's] statements" that he committed burglary and theft to help his brother pay a car payment. We will apply a presumption of reasonableness to the trial court's decision because the trial court listed on the record a ground under Tennessee Code Annotated section 40-35-115(b) on which it based its order of consecutive sentencing.

Based on the Defendant's presentence report, there was sufficient evidence to conclude that the Defendant had a limited work history from age eighteen to twenty-five. After the Defendant turned eighteen years old, he worked for Savannah (Clayton) Home Building from September 1, 2008, until November 30, 2008, served in the U.S. Navy from November 2010 until October 2011, worked for Roach Sawmill from August 1, 2012, until September 1, 2012, and for United Stainless from April 1, 2013, until May 13, 2013. Additionally, the Defendant admitted that he decided to break into the victims' cars in order to obtain money for his brother's car payment. Besides the Defendant's crime spree that forms the basis of the charges of this case, the Defendant was previously convicted of seven counts of fraudulent use of a credit card in 2010, two counts of auto burglary in August 2013, three counts of auto burglary in September 2013, and two counts of auto burglary in Hardin County on the same day as the offenses underlying this case.

It is apparent from the record that, since the Defendant turned eighteen years old, he has only worked for approximately sixteen and one-half months of verified employment and has been convicted of fifty different charges, including charges that

could have provided the Defendant with income, such as credit card fraud and auto burglary. Under these circumstances, we conclude that the trial court did not abuse its discretion in finding that the Defendant was a professional criminal and by ordering consecutive sentencing. See State v. Samuel, 243 S.W.3d 592, 608 (Tenn. Crim. App. 2007) (affirming the trial court's order of consecutive sentencing based on finding that the defendant was a professional criminal because the majority of the defendant's convictions "all deal[t] with the defendant obtaining money" and because of the defendant's scant prior employment history); see also State v. Marques Sanchez Johnson, No. M2012-00169-CCA-R3-CD, 2012 WL 5188136, at *4 (Tenn. Crim. App. Oct. 18, 2012) (affirming the trial court's order of consecutive sentencing based on finding that the defendant was a professional criminal due to testimony at the sentencing hearing that the defendant "committed the thefts in part to provide for himself and his family"), perm. app. denied (Tenn. Jan. 22, 2013). The Defendant is not entitled to relief on this ground.

### Denial of Probation

The Defendant argues that the trial court's denial of probation was an abuse of discretion because "confinement was not shown to be necessary under any of the three situations in T.C.A. § 40-35-103(1)." The State argues that "[b]ecause the record supports the trial court's reasons for denying probation, the trial court's decision is presumptively reasonable."

The abuse of discretion with a presumption of reasonableness standard of review set by our supreme court in Bise also applies to a trial court's decision to grant or deny probation. State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012) (citing Bise, 380 S.W. 3d at 708). Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6).

Tennessee Code Annotated section 40-35-303 states, in part, that "[a] defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less . . . ." Tenn. Code Ann. § 40-35-303(a) (2014). A defendant has the burden of establishing that he is suitable for probation and demonstrating that probation will "subserve the ends of justice and the best interest of both the public and the defendant." Carter, 254 S.W.3d at 347 (quoting State v. Housewright, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)).

When imposing a sentence of confinement, a trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2014).

The trial court found that there was a "great possibility, based upon [the Defendant's] prior record, . . . prior criminal history, and conduct" that "a period of probation will certainly put the Defendant in a position to commit another crime." In considering "whether or not the interests of society are being protected from possible future criminal conduct," the trial court noted that it was "concerned about multiple victims of [the] Defendant and his second spree of auto burglaries." The trial court also found that a sentence of full probation "clearly would . . . unduly depreciate the seriousness of the offenses . . . ." The trial court further found that "confinement [was] worthy of consideration to provide an effective deterrent."

In the current case, the record supports the trial court's denial of probation. The Defendant's criminal conduct underlying the current offenses harmed eighteen different victims in one night. The presentence report reflects that the Defendant has a long history of criminal conduct; he has been convicted of fifty different offenses since 2009. The Defendant had been placed on probation previously; however, his probation was subsequently revoked and his sentence imposed. We conclude the trial court did not abuse its discretion when it denied probation to the Defendant.

*Continuous Confinement*

The Defendant additionally argues that the trial court erred in sentencing him to continuous confinement in violation of Tennessee Code Annotated section 40-35-122 because he was convicted of non-violent property offenses. The State first contends that the Defendant waived this issue by raising it for the first time on appeal. The State further asserts that the trial court did not err in sentencing the Defendant to continuous confinement.

- 10 -

We will initially address the State's waiver argument. As correctly noted by the State, Rule 36(a) of the Tennessee Rules of Appellate Procedure states that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a). "The failure to make a contemporaneous objection constituted waiver of the issue on appeal." State v. Gilley, 297 S.W.3d 739, 762 (Tenn. Crim. App. 2008). However, "when necessary to do substantial justice," this court may "consider an error that has affected the substantial rights of a party" even if the issue was waived. Tenn. R. App. P. 36(b). Such issues are reviewed under plain error analysis. State v. Hatcher, 310 S.W.3d 788, 808 (Tenn. 2010).

Plain error relief is "limited to errors that had an unfair prejudicial impact which undermined the fundamental fairness of the trial." State v. Adkisson, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994). In order to be granted relief under plain error, five criteria must be met: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the accused must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is "necessary to do substantial justice." Adkisson, 899 S.W.2d at 640-41; see also State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000) (Tennessee Supreme Court formally adopting the Adkisson standard for plain error relief). When it is clear from the record that at least one of the factors cannot be established, this court need not consider the remaining factors. Smith, 24 S.W.3d at 283. The defendant bears the burden of persuasion to show that he is entitled to plain error relief. State v. Bledsoe, 226 S.W.3d 349, 355 (Tenn. 2007).

In the current case, the Defendant failed to object to the trial court's order of continuous confinement at the sentencing hearing. Because the Defendant did not raise the issue at the previous proceeding, ordinarily, this issue would be waived. However, it is clear that the plain error doctrine applies to this issue. The technical record includes a transcript of the Defendant's sentencing hearing, which clearly establishes what occurred during the hearing. Second, as explained below, the trial court breached a "clear and unequivocal rule of law" by sentencing the Defendant to continuous confinement. Third, the sentence of continuous confinement affects a "substantial right" of the Defendant. Fourth, there is no evidence that the Defendant waived the issue of whether the trial court properly ordered the Defendant to serve his sentence in continuous confinement for tactical reasons. Lastly, our consideration of the trial court's error in ordering continuous confinement is "necessary to do substantial justice" to the Defendant.

Tennessee Code Annotated section 40-35-122 provides:

(a) Notwithstanding any law to the contrary, except as provided in subsection (b), the judge sentencing a defendant who commits a non-violent property offense, as defined in subsection (c), on or after July 1, 2010, shall not be authorized to impose the sentencing alternatives of continuous confinement in a local jail or the department of correction as authorized by § 40-35-104(c)(5), (c)(6), or (c)(8). However, the judge may sentence the defendant to any of the other sentencing alternatives authorized by § 40-35-104(c), which include, but are not limited to, periodic confinement, work release, community corrections, probation, or judicial diversion.

. . .

(c) As used in this section, a "non-violent property offense" is:

. . .

(18) Burglary of an auto under § 39-14-402(a)(4)[.]

Tenn. Code Ann. § 40-35-122 (2014).

Tennessee Code Annotated section 40-35-104(c) provides:

(c) The following sentencing alternatives in any appropriate combination are authorized for defendants otherwise eligible under this chapter:

(1) Payment of a fine either alone or in addition to any other sentence authorized by this subsection (c);

(2) Payment of restitution to the victim or victims either alone or in addition to any other sentence authorized by this subsection (c);

(3) A sentence of confinement that is suspended upon a term of probation supervision that may include community service or restitution, or both;

(4) A sentence of periodic confinement that may be served in a local jail or workhouse in conjunction with a term of probation;

(5) A sentence of continuous confinement to be served in a local jail or workhouse in conjunction with a term of probation;

(6) A sentence of continuous confinement in a local jail or workhouse;

(7) Work release in accordance with § 40-35-315;

(8) A sentence of continuous confinement in the department of correction if the conviction is for a felony and the sentence is at least one (1) year, unless:

(A) The sentence is prohibited by subsection (b); or

(B) The defendant is convicted of a violation of § 39-14-103, involving property valued at less than one thousand dollars ($1,000), and the defendant is sentenced as an especially mitigated offender as defined in § 40-35-109 or a standard offender as defined in § 40-35-105; or

(9) A sentence to a community based alternative to incarceration in accordance with the provisions, including eligibility requirements, of chapter 36 of this title.

Tenn. Code Ann. § 40-35-104 (2014).

Ordinarily the trial court has discretion to determine whether a defendant should serve a sentence in confinement or should be granted an alternative sentence. However, if a defendant has been convicted of one of the enumerated non-violent property offenses listed in section 40-35-122(c), the trial court cannot order continuous confinement unless the defendant has a prior felony conviction or if the defendant has "[v]iolated the terms and conditions of the alternative sentence originally imposed upon the defendant . . . ." Tenn. Code Ann. § 40-35-122(a), (b). This statute was enacted in 2010 with the goal of allowing non-violent property offenders "to work in order to pay restitution to the victims of their crimes without using scarce prison beds thereby permitting longer sentences for those offenders who do threaten public safety." § 40-35-122, Compiler's Notes; 2010 Tenn. Pub. Acts ch. 1090, § 1. This court has previously held that section 40-35-122 is "clear and unambiguous; therefore, it should [be] enforced as written because 'it is generally presumed that the legislature acted purposefully in the subject included or excluded.'" State v. Astin D. Hill, No. W2012-02147-CCA-R3-CD, 2014 WL 683892, at * 5 (Tenn. Crim. App. Feb. 19, 2014) (quoting State v. Pope, 427 S.W.3d 363, 368

(Tenn. 2013)), no perm. app. filed; see also State v. Hawk, 170 S.W.3d 547, 551 (Tenn. 2005) (discussing statutory interpretation).

Further, "[s]ection 40-35-122(a) specifically and unequivocally omits the three continuous confinement provisions of Section 40-35[-]104(c) from the sentences available for a non-violent property offender." State v. Preston Rashad Royal, No. W2015-01334-CCA-R3-CD, 2016 WL 1446097, at *1 (Tenn. Crim. App. Apr. 12, 2016), no perm. app. filed. If section 40-35-122 applies, the trial court cannot order split confinement, where a defendant serves some time in continuous confinement and the remainder of the sentence on probation. See State v. Devon Elliott Cruze, No. E2014-01847-CCA-R3-CD, 2015 WL 5064070, at *4 (Tenn. Crim. App. Aug. 27, 2015) (reversing the trial court's order that the defendant serve sixty days in continuous confinement and the balance on probation as violative of section 40-35-122), no perm. app. filed.

Section 40-35-122 applies to the Defendant's case. The Defendant was convicted of eighteen counts of auto burglary, a crime that is explicitly included in the list of crimes to which section 40-35-122 applies.[2] Based on the presentence report and the testimony of Officer Michonski, the Defendant had no prior felony convictions at the time the Defendant committed the Wayne County automobile burglaries. The Defendant had been charged with seven counts of Class D felony fraudulent use of a credit card in 2010, but those charges were reduced to misdemeanors and disposed of in the Hardin County General Sessions Court in October 2010. The Defendant had been charged in Hardin County with seven counts of Class E felony burglary of an automobile with offense dates between August 31 and October 14, 2013, but those charges were still pending when the Defendant committed the automobile burglaries in Wayne County.[3] Additionally, the Defendant did not violate the terms of any alternative sentence ordered for a previous non-violent property offense by committing the current crimes. Therefore, neither exception to the general prohibition of ordering continuous confinement for non-violent property offenses applies to the Defendant.

The trial court ordered the Defendant's sentences for these convictions to be served in continuous confinement. We find the State's argument that the Defendant was

_____

[2] The Defendant concedes that the issue of continuous confinement is moot as to his fifteen misdemeanor theft convictions since the Defendant has "fully served those sentences." Therefore, we will not address whether the trial court properly ordered the sentences for the Defendant's theft convictions to be served in continuous confinement.

[3] The presentence report shows an April 17, 2014, disposition date for those seven Class E felonies.

- 14 -

properly sentenced unavailing. Therefore, we hold that the trial court erred when it sentenced the Defendant to fifteen years of continuous confinement in direct contravention of § 40-35-122. We reverse this portion of the trial court's order and remand for a new sentencing hearing for the trial court to determine which alternative sentence under Tennessee Code Annotated section 40-35-104(c) the Defendant should receive. If, as it appears from the record, the Defendant has served more than one year in confinement, periodic confinement under section 40-35-104(c)(4) would no longer be an available sentencing alternative, and the trial court's sentencing alternatives will be limited to those listed in section 40-35-104(c)(1), (2), (3), (7), (9).[4]

### III. Conclusion

For the aforementioned reasons, the judgment of the trial court is affirmed in part and reversed in part.

_____
ROBERT L. HOLLOWAY, JR., JUDGE

---

[4] Split confinement can be defined as a sentence that "requires the defendant to serve a portion of the sentence in continuous confinement followed by service of the remainder of the sentence on probation. Under this option, the trial judge may order continuous confinement in the county jail or workhouse for any period of time not to exceed one (1) year followed by probation for a period of time up to the statutory maximum for the class of the conviction offense." W. Mark Ward, Tennessee Criminal Trial Practice, § 29:8 (2015-2016 ed.) (internal citations omitted). In contrast, periodic confinement can be defined as a sentence that "place[s] a defendant on probation for a period of time up to the statutory maximum for the class of the conviction offense and order the defendant to serve a specific portion of the sentence in periodic confinement for a period of time up to one year. With regard to the period of confinement the judge must specify (a) the total number of months or days to be served, which may not exceed one year, and (b) the days or parts of days the defendant will be confined. The judge may also include in the judgment provisions to ensure the defendant will be allowed to serve the confinement on non-consecutive days, including, but not limited to, weekends, between specified hours." Id. (internal citations omitted)(emphasis added).