IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
November 7, 2017 Session

## STATE OF TENNESSEE v. ANDREW YOUNG KIM

**Appeal from the Circuit Court for Madison County**
**No. 16-354     Donald H. Allen, Judge**

_____

### No. W2017-00186-CCA-R3-CD

_____

The Defendant, Andrew Young Kim, pled guilty to six counts of burglary, seven counts of theft of property in varying amounts, and one count of vandalism. Following a sentencing hearing, the trial court imposed an effective sentence of fourteen years' incarceration. In this direct appeal, the Defendant contends that the trial court improperly sentenced him to continuous confinement for a non-violent property offense and erred in setting the length of his sentences, in denying all forms of alternative sentencing, and in imposing partially consecutive sentences. Upon a thorough review of the record below and applicable law, we affirm the trial court's order as to the length of the Defendant's sentences, the denial of any alternative sentence, and the partial consecutive sentence alignment, but reverse the trial court's order of continuous confinement for the Defendant's Class E felony conviction for theft of property (Count 14), an enumerated non-violent property offense in Tennessee Code Annotated section 40-35-122(c)(11). Upon our de novo review of Count 14, we order that the Defendant's two-year sentence on that count be served on supervised probation with the imposition of $1000 fine. Moreover, for reasons stated herein, Counts 7 through 10 are remanded for correction of clerical errors in the judgment forms. In all other respects, the judgments are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court**
**Affirmed in Part, Reversed in Part & Case Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT L. HOLLOWAY, JR., JJ., joined.

C. Mark Donahoe (at appeal); and Gregory D. Gookin (at sentencing), Jackson, Tennessee, for the appellant, Andrew Young Kim.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; James G. ("Jerry") Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

This case arose from multiple incidents of burglary and theft perpetrated by the Defendant on five different businesses in the Jackson, Tennessee area. The Defendant was eventually indicted on August 1, 2016, for the following fourteen offenses: Counts 1 and 2—burglary, a Class D felony, and theft of property valued at $500 or less, a Class A misdemeanor, for events occurring on December 21, 2015, at Outdoor, Inc.; Counts 3 and 4—burglary and theft of property valued at $1000 or more but less than $10,000, a Class D felony, for events occurring on January 5, 2016, at Outdoor, Inc.; Counts 5 and 6— burglary and theft of property valued at $1000 or more but less than $10,000 for events occurring on January 30, 2016, at Office Max; Counts 7 and 8—burglary and theft of property valued at $1000 or more but less than $10,000 for events occurring on January 30, 2016, at Best Buy; Counts 9 and 10—burglary and theft of property valued at $1000 or more but less than $10,000 for events occurring on February 19, 2016, at Best Buy; Counts 11, 12, and 13—burglary, theft of property valued at $1000 or more but less than $10,000, and vandalism of property valued at $1000 or more but less than $10,000, a Class D felony, for events occurring on April 22, 2016, at Coffman's; and Count 14— theft of property valued at more than $500 but less than $1000, for events occurring on June 16, 2016, at Dick's Sporting Goods. See Tenn. Code Ann. §§ 39-14-103, -105, -402, -408.

Pursuant to a plea agreement with the State, the Defendant sought to enter a guilty plea on October 31, 2016, as a Range I, standard offender, to six counts of burglary, one count of vandalism, and one count of Class E felony theft, and the remaining six theft counts were to be dismissed. The State proffered the following factual basis in support of the Defendant's plea:

In Count 1, December the 21st of 2015, the victim was Outdoor, Inc. Their alarm went off and when they arrived they discovered the glass had been broken out and there had been a Yeti cooler that was taken. I believe that was valued at under $500 in that matter, but it had been taken and so [there was] an investigation to look into that incident. [The Defendant] later admitted to his involvement . . . .

. . . .

Your Honor, in Count 3 it is the same victim, Outdoor, Inc. On January the 5th of 2016, their alarm again went off. They thought it was a mistake and so they told the alarm company not to call the police because they had just closed and the owner went to the location and did discover that the glass had been broken out again to gain entry into the door and that

there had been watches and GoPro cameras close to that door and that's what had been taken this time. It was valued at over $1000. . . . [The Defendant] did later admit that he had taken those items . . . .

. . . .

Count 5, if it please the [c]ourt, is January 30th of 2016. The victim i[s] Office Max on Stonebrook Place. . . . Again, entry was made to that business. An alarm notified them at about 4:19 in the morning. Officers made entry to discover if anybody was in there. They did not find anybody in there, but unlawful entry had been made and there was three memory cards that were taken. A printer and a case of paper had been taken. They did review the video and they observed a male wearing a blue coat, dark blue hat and dark gloves and dark pants. That was the person that had entered the business on that occasion. They did not find anybody else there, but the property that was taken was over the value of $1000 for everything that was taken. . . . [The Defendant] was later interviewed and he did admit to entering Office Max and stealing the printer and the case of paper and the items that had been taken during the burglary. . . . [The Defendant] had confirmed that the printer was in his home. . . .

. . . .

Your Honor, may it please the [c]ourt, Count 7 is January the 30th of 2016. The burglary victim in this matter is Best Buy on Vann Drive. They had an alarm call. They responded to that alarm call while the business was closed. I believe that was at about 5:25 in the morning. They responded. They did find some damage to the box on the back of the building that controls the alarms. At first the manager did not think that there was anything that was taken. He later reviewed footage and later went through the store and did discover that there was some damage to a back door and that there were some items taken. A television, an Apple [i]Mac and another laptop that were taken. All of that totaled more than $1000 in this matter. At the time they did review the video footage to see if they could determine who this individual was. [The Defendant] was developed as a suspect in this matter. He did cooperate with law enforcement . . . . They did find some electronics in his home from this and he did admit to breaking into Best Buy and stealing the computers and TV. . . .

. . . .

-3-

. . . They did not have the amounts in the offense report and I'm looking on the victim impact statement and I believe that that was about $2600.

. . . If it please the [c]ourt, Count 9 is February 19th of 2016. Again, the victim is Best Buy. [The Defendant] did burglarize and get into that building and commit that burglary. . . . They reviewed video cameras once law enforcement got there and they did show an individual that was taking computers. There was about four that were taken and they totaled over $2000 . . . . [The Defendant] did admit that he did take those items, those computers, from Best Buy. . . .

. . . .

. . . [Officers] initially responded at 11:59 that night. They went back at 3:15 because they took in the report exactly what was stolen after they discovered things were stolen. The initial one was around midnight. The store was closed.

. . . .

. . . If i[t] please the [c]ourt, Count 11 is [April] the 22nd of 2016. It's a burglary with the victim as Coffman's on the Highway 45 [B]ypass. On that night, . . . I believe it was around 12:45 a.m. The Jackson Police Department responded to a burglary call at Coffman's. When they arrived, they found that a large window was broken in the front of the store and that there had been some furniture taken. I believe that furniture and items were over $6000 that were taken. . . . There was a search warrant in which items stolen from the Coffman's burglary were recovered from [the Defendant's] home . . . .

. . . Count 13 is that he did knowingly cause damage over the value of $1000 to Coffman's. That is for the large window, to replace and to repair that window that was damaged. . . .

. . . .

Your Honor, [Count 14] is actually [a] theft that [the Defendant committed] on June the 16th of 2016[,] . . . the owner being Dick's Sporting Goods . . . . On that day the store was open and he went in at about 12:41 p.m. carrying nothing but a cell phone in his hands. He picked up a cart and began selecting miscellaneous merchandise in the store. He

-4-

then walked up to the register and conducted a return of those items. All that they would give him was a gift card for $344.62. He then—that was a fraudulent return. He then took that card and reentered the shopping area and selected a shirt and a Yeti cooler with that gift card and then exited the business with the shirt and the Yeti cooler. They are valued at over $300 . . . . That was captured on video camera at Dick's Sporting Goods.

Despite the prosecutor's averments that it was customary practice in the jurisdiction to proceed on the burglary counts and dismiss the corresponding theft counts, the trial court declined to accept the Defendant's plea, stating that to do so was not "in the interests of justice."

On November 7, 2016, the Defendant entered a "blind plea" to the indictment with sentencing to be determined by the trial court at a later time. The trial court accepted the Defendant's plea of guilty to all charges. However, no transcript of the November 7, 2016 plea acceptance hearing is included in the record on appeal.

The Defendant's sentencing hearing was held on December 20, 2016. Four witnesses representing their respective businesses testified about the break-ins and the damage done to their stores. Each of the four witnesses requested restitution.

Mr. George Hazelhurst from Outdoor, Inc., testified that his store was burglarized on December 21, 2015, and again January 5, 2016, and that Yeti coolers, GoPro cameras and Garmin watches were stolen during the burglaries. Mr. Hazelhurst estimated that the total amount of damage done to his store "was a little over $1000" and that the total value of the merchandise taken was "[a]round $3000." Mr. Hazelhurst testified that he knew the Defendant's family and that he had forgiven the Defendant. However, Mr. Hazelhurst opined that the Defendant needed to "get his act together" and "serve his time[.]" Additionally, Mr. Hazelhurst recalled that the Defendant came into the store the day after the first robbery "and shopped and was asking" about the burglary.

Mr. Ronald Noel, representing Office Max, testified that a front window was "shattered" during the burglary on January 30, 2016, and that the window cost was about $1200. According to Mr. Noel, a large printer worth "about $700" was stolen, in addition to "[s]ome other assorted smaller goods."

Mr. Robert Rains from Best Buy testified that the Jackson location was burglarized twice after hours—first on January 30, 2016, and then again on February 19, 2016. According to Mr. Rains, the Defendant "pried the door open on both occasions[.]" Mr. Rains averred that, during these burglaries, the Defendant took some computers, televisions, and MacBooks. Mr. Rains valued specific stolen items—an iMac computer at $2138, an "HP Spectrum" computer at $1050, a Samsung fifty-five-inch television at

$1124, an ASUS computer at $644, a "Yoga computer" at $560, and "two Lenovo Edge" computers at $1396. Mr. Rains placed the total amount of loss at $6,913.83.

According to Mr. Rains, the Defendant "first came [in] to Best Buy" last November and introduced himself, seeming "like a really nice guy." In addition to requesting restitution and banning the Defendant from the store, Mr. Raines also wanted the Defendant to be banned from shopping online with Best Buy because the Defendant's frequent returns had cost the store time and money. Moreover, according to Mr. Rains, the Defendant made a false report to the police about Best Buy fraudulently keeping his computer, and the Defendant tried to steal a new computer by putting a return sticker on it while hiding the one he brought into the store inside an oven. Mr. Rains testified that the Defendant had already been banned from Best Buy before these burglaries.

The last witness from the State was Mr. Bobby Coffman, the owner of Coffman's Furniture. Mr. Coffman testified that he personally responded to the alarm at his store on April 22, 2016, sometime between 12:30 and 1:00 a.m. According to Mr. Coffman, "[t]he window unit on the front of the building was broken out[,]" which cost $1,091.25 to replace. Mr. Coffman said that there was also "some merchandise that was damaged in and around where the window was broken out[,]" and he valued this damage "close to $4000." He then specified the damage to certain items—a Tempur-Pedic mattress that was later recovered, but because they were unable by law to resell the mattress, Mr. Coffman valued the loss for the mattress at $1665; a "Big Green Egg" grill that had been "flipped over and broken in an attempt to carry it out of the store[,]" which Mr. Coffman valued at $740; a damaged chair worth $469; and a damaged rug worth $279.

When asked what items were stolen from the business, Mr. Coffman stated that "it was about [fourteen] items all together"—"[f]urniture items, accent chest, oil painting, rug, [and] miscellaneous accessory items." Mr. Coffman valued these items at approximately $5200. Furthermore, Mr. Coffman confirmed that several of the stolen items were large and would have likely taken more than one person to remove them from the store.

According to Mr. Coffman, they were able to recover the stolen items, selling "[m]ost of those items . . . at a significant discount" or giving them to charity. Mr. Coffman confirmed that he filed an insurance claim for "around $4400" and that he "recovered between $1900 and $2000" from the insurance company, after paying his deductible of $2500. He confirmed that the insurance claim covered the damage and stolen items and the store window unit.

Mr. Coffman stated that he knew the Defendant's family, although he did not know the Defendant personally. Mr. Coffman relayed that the Defendant came into Coffman's the day before the burglary and "spent a significant amount of time going

around [the] store making notes and taking pictures of different items and so forth." Furthermore, according to Mr. Coffman, the Defendant came into the store the day after the burglary and talked with some of the sales people. He conveyed that some of the sales people knew the Defendant and that they were afraid when they found "out what had happened and knowing that he had been in the store twice before and after." Also, according to Mr. Coffman, "It put our family under a lot of duress just dealing with all of this as well."

The State did not present a witness from Dick's Sporting Goods. The presentence report was entered into evidence and was accompanied by victim impact statements from Outdoor Inc., Best Buy, and Coffman's. The Defendant only had one speeding ticket on his record at the time of the sentencing hearing.

The Defendant presented testimony from Dr. Lynn Zager, an expert in "psychological evaluation/forensic psychological evaluation." Dr. Zager evaluated the Defendant and diagnosed him with a "mood disorder, not otherwise specified, post-traumatic stress disorder, benzodiazepine use disorder, [and] antisocial personality disorder."

With regard to the Defendant's mood disorder, Dr. Zager stated that depression was a "significant issue" for the Defendant and noted that the Defendant had received treatment for depression in the past. However, the Defendant's taking of medication hindered Dr. Zager's ability to make a more specific diagnosis.

Additionally, Dr. Zager believed that post-traumatic stress disorder was also a "very significant" issue for the Defendant because he had suffered "two very serious traumas[.]" First, the Defendant was a manager at a bowling alley where he witnessed a shooting. The person attempted to shoot the Defendant, but the "gun misfired." The Defendant claimed that he had a gun himself "but elected not shoot at the perpetrator because there were so many innocent people around[.]" The Defendant used his car to block the perpetrator in until the police arrived. A person died, and the Defendant "was involved with the cleanup[.]" The Defendant also had to testify in court, which "was a continuation of the trauma" for him by causing "very significant anxiety[.]"[1] The second incident occurred "on a very isolated[,] deserted road" in California. The Defendant was driving when "he came upon a person l[]ying in the middle of the street" due to a car accident. He stopped to assist the person in the street who was still alive and waited for

---

[1] We agree with the State that this recount of the Defendant's differs markedly from his trial testimony. See State v. Ledarren S. Hawkins, No. W2010-01687-CCA-R3-CD, 2012 WL 543048, at *2 (Tenn. Crim. App. Feb. 16, 2012), rev'd in part, 403 S.W.3d 121 (Tenn. 2013). There, the Defendant testified that he "did not see anything related to this incident firsthand" and that, while he "stopped the vehicle, . . . he allowed the vehicle to leave the parking lot because he could not determine the occupants' involvement."

the first responders to arrive. However, "apparently there was another person in one of the cars who was still alive unbeknownst to him or the first responders[,] and [the Defendant] heard that last breath as that person expired." According to Dr. Zager, the Defendant had never received needed treatment for "those traumas[,]" which would have included medication and counseling.

Dr. Zager relayed that the Defendant also had "an antisocial personality disorder." However, Dr. Zager relayed that antisocial personality disorder was not treatable with medication and was, on the whole, "much more challenging to treat[.]"

Dr. Zager testified about the Defendant's substance abuse issues. Dr. Zager confirmed that the Defendant had received in-patient "substance abuse rehabilitation" in July 2015, which was prior to his commission of any of these offenses. However, according to Dr. Zager, this treatment addressed the Defendant's substance issues but not "the mental health issues at all."

Dr. Zager agreed that the Defendant was competent but concluded that the Defendant "was suffering from a mental illness at the time the offenses occurred." The fact that the Defendant was taking Ambien at the time "of some of" these burglaries was "[a]nother complicating issue[,]" in Dr. Zager's opinion. According to Dr. Zager, Ambien could have caused a "dissociative-type reaction"; a reaction that was also common with post-traumatic stress disorder. Dr. Zager described a dissociative state: "[I]t's almost like they take a step out of their body and they are observing what's happening, but not experiencing it[.]"

According to Dr. Zager, the Defendant expressed "legitimate" remorse for his crimes. She recommended "long-term outpatient counselling" for the Defendant, which she did not think he could get if incarcerated. However, she agreed that the Defendant's incarceration so far had helped him to become "motivated to change[.]"

Dr. Zager's report was admitted into evidence. In the report, Dr. Zager concluded that, although the Defendant suffered from mental illnesses, "his capacity to appreciate the nature and wrongfulness of his behavior at the times of the alleged offenses was not significantly [impaired.]" Moreover, it was noted that the Defendant had returned to using drugs prior to his incarceration for these crimes.

The thirty-one-year-old Defendant made a statement in allocution. The Defendant apologized to all those "affected by [his] poor decisions" and stated that he "deeply regret[ted]" his actions. The Defendant claimed that "[t]he entire experience ha[d] heavily worn" on him and had been "especially difficult for [his] family and loved ones." According to the Defendant, while incarcerated, he was "confronted by the painful truth that [he] ha[d] been living a horrible life full of lies and deception." He

-8-

stated that, although he was "at rock bottom," he had maintained his faith in God and wanted to strive for "a life of integrity and honesty[.]" The Defendant asked "for mercy and understanding[,]" claiming that he would never "do this or anything that would jeopardize [his] freedom again." According to the Defendant, he wished "to rehabilitate [him]self in joint programs[,]" including participation in Celebrate Recovery. He recognized that his "actions ha[d] caused [him] to lose so many precious moments that [he would] never be able to get back[,]" like missing family events. Furthermore, he stated that he already lost his car and was about to lose his house as well.

After hearing the arguments of counsel and reviewing the evidence and sentencing considerations, the trial court classified the Defendant as a Range I, standard offender. The trial court also found five enhancement factors applicable. See Tenn. Code Ann. § 40-35-114.

First, the trial court, noting the Defendant's substance abuse problem, found that the Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. See Tenn. Code Ann. § 40-35-114(1). However, the trial court chose to give this factor "very slight weight."

Second, the trial court determined that the Defendant was a leader in the commission of the offense at Coffman's. See Tenn. Code Ann. § 40-35-114(2). According to the trial court, the Defendant gave a police statement wherein "he made references to other people that were involved with him when he broke into Coffman's[.]" The trial court also noted Mr. Coffman's testimony that there were several large items taken from the store, which would have required assistance to move. The trial court said that it would apply "great weight" to this factor when considering the counts of the indictment that named Coffman's as the victim.

Third, the trial court found that the offenses involved more than one victim but stated that this factor was not given "much enhancement weight[.]" See Tenn. Code Ann. § 40-35-114(3). The trial court reasoned, "[H]e is being convicted and being sentenced on at least [fourteen] counts involving at least seven different victims. You know, this really involves seven separate criminal episodes over the period of about five months."

Next, the trial court stated that it would apply the factor "[t]hat the amount of damage to property sustained [by] or taken from the victims was particularly great[.]" See Tenn. Code Ann. § 40-35-114(6). In giving this factor "great weight," the trial court remarked that it had heard testimony from "representatives from these various businesses about what property was taken [and] what damage was done to their business."

Regarding the December 21, 2015 events at Outdoor, Inc., the trial court observed that the Defendant broke a window and stole a Yeti cooler; that the Defendant went in to the store the day after the robbery and spoke with Mr. Hazelhurst "about the break-in and about what had happened"; and that the break-in diverted the business's valuable time away from other tasks during the holiday season, "the busiest shopping period of the year[.]"  The trial court then mentioned that, two weeks later on January 5, 2016, the Defendant broke the same window at Outdoor, Inc., which had since been replaced; that, during this incident, the Defendant stole about $3000 of property; and that, in response, the business "put up security bars and tr[ied] to make other efforts to keep people from breaking into their business."  The trial court surmised that Outdoor, Inc. had "suffered a tremendous loss of property."

According to the trial court, the same was true for Office Max—that business having its window "smashed out" on January 30, 2016, and items valued at over $1000 taken from the store.  The trial court further remarked that the cost to repair the window was $1200.

The trial court next observed that Best Buy had "suffered two break-ins," one on January 30, 2016, and the other on February 19, 2016, and that "[a] lot of valuable items . . . were taken from that business."  According to the trial court, Best Buy's loss from these two incidents totaled around $9000.  The trial court then noted that Mr. Rains testified that, prior to the burglaries, the Defendant had already been banned from Best Buy.

As for the events occurring at Coffman's on April 22, 2016, the trial court stated that "a large window was knocked out valued at over $1000"; that "[a]bout $5200 of items were stolen from [this] business"; and that there was "[a]proximately another $4000 worth of merchandise [that] was damaged as a result of the break-in[.]"

The trial court, after relaying the facts of each break-in, stated that it was accrediting the testimony of Mr. Coffman, Mr. Hazelhurst, and Mr. Rains that they knew of the Defendant and that he had been inside their stores.  The trial court opined that, based upon the Defendant's actions, such as taking pictures at Coffman's, he appeared to be "casing out the businesses[.]"

As its final enhancement factor, the trial court considered that, at the time the Defendant committed the Class E felony on June 16, 2016, he was released on bond.  See Tenn. Code Ann. § 40-35-114(13)(A).  According to the trial court, the Defendant had been arrested for the six prior burglaries and released on bond on May 15, 2016.  It was only a month later that the Defendant stole from Dick's Sporting Goods.  The trial court said that it was giving this factor "great weight for enhancement purposes."

The trial court then discussed the Defendant's evidence presented in mitigation, relaying that it had reviewed the presentence report and considered all of the testimony presented at the hearing. See Tenn. Code Ann. § 40-35-113. The trial court first observed that the Defendant had made an allocution statement, wherein he "express[ed] some remorse for his actions." The trial court then noted that the Defendant had suffered from substance abuse in the past, that he had received treatment "several months prior to committing all of these offenses[,]" and that, while "it helped him at first," "then he did not take into consideration the consequences." The trial court opined that, "for whatever reason[, drug treatment] certainly ha[d]n't helped [the Defendant] change his behavior[.]" The trial court also referenced the Defendant's employment history—remarking that the Defendant had worked at Forever Communications "for a short period of time[,]" and later at Carlock Nissan for about four months, and then at AFLAC for "about nine months during the time period that he committed these offenses." The trial court observed that the Defendant "was actually working making some [money] during the time that he [was] out [t]here breaking into all of those businesses and stealing all of th[eir] property." After reviewing the mitigation evidence, the trial court concluded that it did not "see anything . . . that [it] would consider mitigating on the [D]efendant's behalf."

Before imposing the length of each sentence, the trial court made one more observation—that the Defendant was not "someone that's lacking for money." Citing to the presentence report, the trial court noted that the Defendant had a home valued at about $160,000, had an "interest in a business called Andy Kim Skating, LP, with an unknown amount of equity[,]" had two different bank accounts with "a combined balance of $4200 plus the salary that he was earning through his job at AFLAC[,]" and was leasing a vehicle valued at about $38,000. The trial court surmised, "[T]here is really no reason he would go out and commit all of these other than just to make more money, I guess."

After considering the enhancement and mitigating factors, the trial court sentenced the Defendant to three years for each of the twelve Class D felonies, which included burglary, theft of property valued at $1000 or more but less than $10,000, and vandalism of property valued at $1000 or more but less than $10,000 (Counts 1, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13); two years for the one count of Class E felony theft (Count 14); and eleven-months and twenty-nine days for the one count of Class A misdemeanor theft (Count 2). The trial court also ordered restitution in the amount of $4000 to Outdoor, Inc., $1900 to Office Max, $7,913.83 to Best Buy, and $3000 to Coffman's. The trial court additionally ordered a $1000 fine for each of the fourteen counts, the Defendant to pay court costs, the Defendant to submit to DNA testing, and the Defendant to have no contact with any of these businesses in the future, including Best Buy online.

The trial court then addressed the Defendant's request for alternative sentencing. The trial court said that it did not accredit Dr. Zager's testimony "at all" and, consequently, it did not believe that the Defendant was "suffering from any type of mental health disorder." The trial court noted that the Defendant's crimes "required a lot of planning" because the Defendant "was going out to these businesses, visiting these businesses, scoping out what property he perhaps wanted to take[,]" and then going back later and breaking into these businesses when they were closed. The trial court likewise did not believe that the Defendant was suffering from any physical condition.

Deliberating on the circumstances surrounding these offenses, the trial court stated that "the totality of all of this criminal activity, it [was] very extensive." The trial court remarked that there were seven separate victims over a five-month time period, that "[t]hese [were] large thefts[,]" that the victims asked for imprisonment wanting the Defendant to be held accountable for his actions, and that the victims' had used both time and monetary expenditures "to deal with this."

The trial court found that the Defendant's potential for rehabilitation was "very poor," giving "great weight" to the fact that the Defendant was on bond when he committed the theft at Dick's Sporting Goods. The trial court reasoned that the Defendant gave "a full confession" upon his arrest for these six burglaries, that he was released on a $50,000 bond, but that, "a month later[,] he [was] out doing the same thing again[.]" In addition, the trial court remarked that the Defendant had not "made any effort to try to rehabilitate himself."

According to the trial court, the "interests of society in being protected from this defendant's criminal conduct in the future [was] great." In this regard, the trial court maintained that "[w]e have to protect our businesses" and "to protect these owners who have to suffer from thieves who want to break in and steal." The trial court also determined that "confinement [was] particularly suited to provide an effective deterrent to others who [were] likely to commit similar offenses," noting again the extensive measures businesses had to take to deal with thieves and to protect their property. The trial court concluded that the Defendant was "not a good candidate for alternative sentencing" "based upon the extensive activity, the extensive criminal activity that he committed over a five-month period."

Finally, the trial court addressed the imposition of consecutive sentencing, stating initially that Count 14 involving Dick's Sporting Goods was, by law, mandatorily consecutive to the other counts because the Defendant "was out on bond when he committed that theft." The trial court stated that it was "look[ing] at the overall activity of this defendant[,]" and found that discretionary consecutive sentencing was also appropriate "to protect society from this defendant's unwillingness to lead a productive life and the [D]efendant's resort to criminal activity in furtherance of [an] anti-societal

-12-

lifestyle." Stated another way, "I'm thinking why would this young man[,] who basically has a good financial living situation[,] go[] out and just start[] committing these various crimes[,] . . . other than he just wants to resort to criminal activity as part of his lifestyle." The trial court further determined that the aggregate length of the sentence was reasonably related to "the [fourteen] different offenses for which [the Defendant] st[ood] convicted."

In fashioning the Defendant's sentence, the trial court aligned the sentences related to each victim concurrently, while aligning the aggregated sentences for each victim consecutively to one another. Specifically, an aggregate three-year sentence was imposed for Counts 1 through 4 relating to Outdoor, Inc.; an aggregate three-year sentence was imposed for Counts 5 through 6 relating to Office Max; an aggregate three-year sentence was imposed for Counts 7 through 10 relating to Best Buy; an aggregate three-year sentence was imposed for Counts 11 through 13 relating to Coffman's; and a two-year sentence for the Dick's Sporting Goods theft in Count 14. These sets of offenses as they related to each victim were to be served consecutively to one another, resulting in a total effective sentence of fourteen years in the Department of Correction.

ANALYSIS

On appeal, the Defendant contends that the trial court improperly sentenced him to full confinement on Count 14 because Tennessee Code Annotated section 40-35-122 prohibits continuous confinement for a non-violent property offense. The Defendant also argues that the trial court erred regarding the length of his various sentences, the denial of any form of alternative sentencing, and the imposition of partially consecutive sentencing. The State concedes error on Count 14 but submits that the trial court's sentencing decision should be affirmed in all other respects.

*I. Standard of Review*

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b). When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. State v. Bise, 380 S.W.3d

682, 707 (Tenn. 2012). This standard of review also applies to "the questions related to probation or any other alternative sentence," see State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012), and also to consecutive sentencing determinations, see State v. Pollard, 432 S.W.3d 851, 860-61 (Tenn. 2013). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001).

This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." Bise, 380 S.W.3d at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," Tennessee Code Annotated section 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," Tennessee Code Annotated section 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," Tennessee Code Annotated section 40-35-103(5). Carter, 254 S.W.3d at 344. Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2) & (4).

## II. *Length of Terms, Alternative Sentencing, and Consecutive Sentencing*

The Defendant contends that the court erred in setting the length of his sentences, in denying all forms of alternative sentencing, and in imposing partially consecutive sentences. The State responds that the trial court did not abuse its discretion and that the Defendant's sentences, other than Count 14, should be upheld.[2]

### A. *Sentence Length*

The Defendant contends that the trial court improperly applied enhancement factors (2) and (3) in fashioning the Defendant's sentence. See Tenn. Code Ann. § 40-35-114(2) & (3). He makes no challenge to any of the other three enhancement factors applied by the trial court.

The weight to be afforded an enhancement or mitigating factor is left to the trial court's discretion so long as its use complies with the purposes and principles of the 1989

---

[2] Although the appellate record does not include a copy of the November 7, 2016 guilty plea transcript, we deem the record, which does include the October 31, 2016 transcript and a verbatim recitation of the facts supporting each count, sufficient for this court to conduct a meaningful review.

Sentencing Act and the court's findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210(d)-(f); Carter, 254 S.W.3d at 342-43. Moreover, no longer does misapplication of an enhancement or mitigating factor "invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." Bise, 380 S.W.3d at 706. Accordingly, this court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." Id. at 709-10.

Regarding enhancement factor (2)—that the defendant was a leader in the commission of an offense, the trial court gave this factor "great weight" in the counts naming Coffman's as the victim, i.e., Counts 11, 12, and 13. The Defendant cites to State v. Randell Murphy, for the proposition that, even if others were involved, "there was no proof, either during the guilty plea submission hearing or the sentencing hearing, to establish that the defendant had a leadership role in the offenses." No. W2011-00744-CCA-R3-CD, 2012 WL 1656735, at *10 (Tenn. Crim. App. May 9, 2012). The trial court, in its ruling, noted that the Defendant, in his statement to police, apparently "made references to other people that were involved with him when he broke into Coffman's and stole some large items." Mr. Coffman also testified that, due to the size of several of the stolen items, it would be unlikely that someone could have removed those alone without assistance. Moreover, from Mr. Coffman's testimony at the sentencing hearing, it appeared as though the Defendant was "casing out" Coffman's the day before the burglary "making notes and taking pictures of different items and so forth." The Defendant also came into the store the day after the burglary. We conclude that the record supports application of enhancement factor (2) to the Coffman's counts of the indictment.

Regarding enhancement factor (3)—that the offenses involved more than one victim, the trial court applied this factor but stated that this factor was not given "much enhancement weight[.]" In applying this factor, the trial court reasoned, "[H]e is being convicted and being sentenced on at least [fourteen] counts involving at least seven different victims. You know, this really involves seven separate criminal episodes over the period of about five months." The Defendant cites to State v. Imfeld in support of his argument that enhancement factor (3) is inapplicable when a defendant is convicted of separate offenses as to each victim. 70 S.W.3d 698, 705-06 (Tenn. 2002). Our supreme court has said that this enhancement factor may be applied only to an offense involving more than one victim, not to offenses in which there is a specific, named victim. Id. In the present case, the indictment named each of the five businesses as a victim of the charged offenses. While the trial court erred in applying this enhancement factor, the trial court also did not give it "much enhancement weight."

-15-

The Defendant also submits that the trial court failed to properly consider Dr. Zager's testimony in mitigation. According to the Defendant, Dr. Zager's testimony supports application of mitigating factors (8) and (13). See Tenn. Code Ann. § 40-35-113(8) ("The defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense[.]") & (13) ("Any other factor consistent with the purposes of this chapter."). The Defendant notes that Dr. Zager's testimony "was uncontroverted by any other testimony" and submits that he should be allowed to receive needed "rehabilitative mental health treatment."

In examining the Defendant's mitigation evidence, the trial court discussed the Defendant's history of substance abuse, noting that the Defendant had received drug treatment prior to the commission of these offenses and had returned to using drugs. The trial court also reviewed the Defendant's employment history, observing that the Defendant "was actually working making some[ money] during the time" he burglarized these businesses and that he was not a person "lacking for money." The trial court concluded that it did not "see anything . . . that [it] would consider mitigating on the [D]efendant's behalf." Later in its ruling, the trial court stated that it did not accredit Dr. Zager's testimony "at all" and, consequently, it did not believe that the Defendant was "suffering from any type of mental health disorder."

The trial court heard Dr. Zager's live testimony at the sentencing hearing and was in the best position to assess credibility. See Bise, 380 S.W.3d at 709 n.43. The record does not preponderate against the trial court's credibility determination. Moreover, the trial court aptly observed that the Defendant's crimes "took a lot of planning[.]" In the report, Dr. Zager concluded that, although the Defendant suffered from mental illnesses, "his capacity to appreciate the nature and wrongfulness of his behavior at the times of the alleged offenses was not significantly [impaired.]" In addition, the Defendant's version of the two incidents of trauma he suffered, as recounted by Dr. Zager, can only be categorized outlandish.

Again, a trial court's erroneous consideration of some enhancement or mitigating factors, which are merely advisory, does not give this court grounds for reversal when the trial court otherwise conforms with the mandates of the Sentencing Act. See Bise, 380 S.W.3d at 709-10; Carter, 254 S.W.3d at 346. Most importantly, the Defendant makes no argument that any of the other three enhancement factors were improperly applied to him—that the Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; that the amount of damage to property sustained by or taken from the victims was particularly great; or that at the time the Defendant was on bond when he committed the Class E felony theft. See Tenn. Code Ann. § 40-35-114(1), (6) & (13)(A). The record demonstrates that the trial court sentenced the Defendant in accordance with our Sentencing Act. Accordingly,

we cannot say that the Defendant has established that the trial court abused its discretion by enhancing the lengths of his sentences, and he is, therefore, not entitled to relief. See, e.g., State v. Joshua Iceman, No. M2016-00975-CCA-R3-CD, 2017 WL 4805118, at *32 (Tenn. Crim. App. Oct. 24, 2017), perm. app. denied (Tenn. Feb. 14, 2018); State v. Richard Dickerson, No. W2012-02283-CCA-R3-CD, 2014 WL 1102003, at *12 (Tenn. Crim. App. Mar. 19, 2014) (both cases concluding that the trial court improperly considered two of three enhancement factors it applied but, nonetheless, otherwise conformed with the mandates of the Sentencing Act, so the defendant was not entitled to relief).

B. *Alternative Sentencing*

Relative to the trial court's denial of alternative sentencing, the Defendant contends that "the trial court erred by sentencing [him] to a period of confinement rather than by less restrictive means." The Defendant asserts that, although the trial court mentioned his prior substance abuse, it "completely disregarded the testimony and report of" Dr. Zager, thus, failing "to adequately take into account [his] potential and need for rehabilitative measures." The Defendant also notes that he is a favorable candidate for alternative sentencing.

The Defendant was convicted of twelve Class D felonies and a Class A misdemeanor.[3] Therefore, he was to be "considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). However, no longer is any defendant entitled to a presumption that he or she is a favorable candidate for alternative sentencing. Carter, 254 S.W.3d at 347. Tennessee Code Annotated section 40-35-102(6) is now only advisory. See Tenn. Code Ann. § 40-35-102(6)(D). A trial court should consider the following when determining any defendant's suitability for alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C).

---

[3] We will discuss alternative sentencing options for the Class E felony theft, Count 14, separately.

In denying alternative sentencing, the trial court stated that it did not find Dr. Zager's testimony credible and did not believe that the Defendant was "suffering from any type of mental health disorder." As stated above, the record does not preponderate against that finding. The trial court also commented on the circumstances surrounding the offenses, noting that "the totality of all of this criminal activity" was very extensive, involving seven separate victims over a five-month time period. The court further noted that "[t]hese [were] large thefts" causing the businesses to use both time and monetary expenditures. The trial court also found that the Defendant's potential for rehabilitation was poor, giving "great weight" to the fact that the Defendant was on a $50,000 bond when he committed the theft at Dick's Sporting Goods. Moreover, society "great[ly]" needed to be protected "from this defendant's criminal conduct in the future[.]" The trial court also determined that "confinement [was] particularly suited to provide an effective deterrent to others who are likely to commit similar offenses," noting the extensive measures businesses had to take to deal with thieves and to protect their property. The trial court properly considered the sentencing principles in its alternative sentencing decision. Accordingly, the Defendant has failed to establish an abuse of discretion or otherwise overcome the presumption of reasonableness in this regard.

## C. *Consecutive Sentences*

The Defendant also contends that trial court erred in ordering partially consecutive sentencing. Specifically, the Defendant requests "this court consider that no one suffered bodily injury in these burglaries of businesses" and that "[n]o habitations were intruded upon." He further notes that he "is capable of making restitution if allowed to work and attempt to maintain employment" and that he "is willing and able to seek rehabilitation for his mental health issues."

Our supreme court has held that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to consecutive sentencing determinations" "if [the trial court] has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)[.]" Pollard, 432 S.W.3d at 860-61. Further, "[s]o long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." Id. at 862 (citing Tenn. R. Crim. P. 32(c)(1)) ("The order [for consecutive sentences] shall specify the reasons for this decision and is reviewable on appeal.").

Tennessee Code Annotated section 40-35-115(b) provides that a trial court should consider the following criteria in determining whether to impose consecutive sentencing:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

The trial court may impose consecutive sentencing upon finding the existence of any one of the criteria contained in Tennessee Code Annotated section 40-35-115(b).

In the instant case, the trial court first determined that consecutive sentencing was required by law with respect to the conviction for theft from Dick's Sporting Goods, Count 14, because the Defendant committed the offense while he was released on bond for the other offenses. This is a correct statement of the law regarding mandatory consecutive sentencing. See Tenn. Code Ann. § 40-20-111(b) (stating that consecutive sentencing is mandatory for offenses committed while a defendant is released on bail, provided the defendant is convicted of both offenses); Tenn. R. Crim. P. 32(c)(3)(C) (requiring consecutive sentencing where "the defendant was released on bail and the defendant is convicted of both offenses").

-19-

In imposing discretionary consecutive sentencing on the other thirteen counts, the trial court stated that it was "look[ing] at the overall activity of this defendant[,]" believing that consecutive sentencing was necessary "to protect society from this defendant's unwillingness to lead a productive life and the [D]efendant's resort to criminal activity in furtherance of [an] anti-societal lifestyle." According to the trial court, the Defendant "just want[ed] to resort to criminal activity as part of his lifestyle." The trial court also concluded that the aggregate length of the sentences was reasonably related to "the [fourteen] different offenses for which [the Defendant] st[ood] convicted."

Despite having no prior criminal record other than a speeding ticket, the Defendant was convicted of fourteen crimes, including thirteen felonies, for his crime spree that spanned a five-month period. There were seven different incidents, and five separate businesses were burglarized. While the trial court did not identify with particularity which of the consecutive sentencing criterion it was relying upon, the record supports the imposition of consecutive sentencing based upon a finding that the Defendant "is an offender whose record of criminal activity is extensive." See Tenn. Code Ann. 40-35-115(b)(2).

This court has held that current offenses may be used in determining whether a defendant's record of criminal activity is extensive for the purposes of consecutive sentencing. See State v. Cummings, 868 S.W.2d 661, 667 (Tenn. Crim. App. 1992); State v. Carolyn J. Nobles, No. M2006-00695-CCA-R3-CD, 2007 WL 677861, at *12 (Tenn. Crim. App. Mar. 7, 2007); State v. Bobby Blair, No. M2002-02376-CCA-R3-CD, 2003 WL 22888924, at *3 (Tenn. Crim. App. Dec. 5, 2003) ("[T]his court has held that [Tennessee Code Annotated section 40-35]-115(b)(2) applies to both the extensive nature of the defendant's present convictions and the defendant's history of criminal activity.") (citing State v. Palmer, 10 S.W.3d 638, 648-49 (Tenn. Crim. App. 1999)). Accordingly, we cannot conclude that the trial court abused its discretion in imposing partially consecutive sentences. See, e.g., Cummings, 868 S.W.2d at 667 (upholding the imposition of consecutive sentencing for a defendant who was convicted of eight crimes in a single trial based on the fact that the defendant's record of criminal activity was extensive even though he had no prior criminal convictions); State v. Tracy Thomas Hepburn, No. M2008-01979-CCA-R3-CD, 2010 WL 2889101, at *11 (Tenn. Crim. App. July 23, 2010) (affirming the imposition of consecutive sentencing based upon the defendant's extensive criminal activity when, in the case under review, the defendant was convicted of sixty-two counts of burglary, attempted burglary, vandalism and theft offenses committed against approximately twenty-six businesses, some of which the defendant victimized more than once, over a period of approximately five weeks); State v. State v. Alex Dewayne Welles, No. W2003-02282-CCA-R3-CD, 2004 WL 1606976, at *2 (Tenn. Crim. App. July 16, 2004) (upholding consecutive sentencing for a defendant convicted of forty-eight crimes occurring within a ten-month period, involving

-20-

at least twenty-eight victims, some of whom the defendant victimized on more than one occasion).

At this juncture, we note that the judgment forms for Counts 7 through 10 do not properly reflect the trial court's ruling. The judgment forms in the record indicate that Counts 7 and 8 run concurrently with one another but consecutively to Counts 1 through 6. The judgment forms for Counts 9 and 10 reflect that they run concurrently with one another but consecutively to Counts 1 through 8. However, this was not the trial court's desired sentencing structure. The trial court stated specifically that "Counts 7 through 10 which involve the two break-ins at the Best Buy business" were to be served concurrently with one another but consecutively to Counts 1 through 6. The proper alignment of these four counts results in an effective fourteen-year sentence, as computed by the trial court. Accordingly, the judgments in Counts 7 through 10 are remanded for correction.

### III. *Count 14*

Finally, we address the Defendant's argument that his sentence of continuous confinement for Count 14 was contrary to Tennessee Code Annotated section 40-35-122 because he was convicted of a non-violent property offense. The State concedes the point, acknowledging that, because the Defendant was convicted of a non-violent property offense in Count 14, a period of continuous confinement was not authorized by statute.

Tennessee Code Annotated section 40-35-122 governs sentencing for non-violent property offenses, and it provides, in relevant part, as follows:

> (a) Notwithstanding any provision of law to the contrary, except as provided in subsection (b), the judge sentencing a defendant who commits a non-violent property offense, as defined in subsection (c), on or after July 1, 2010, shall not be authorized to impose the sentencing alternatives of continuous confinement in a local jail or the department of correction as authorized by § 40-35-104(c)(5), (c)(6), or (c)(8). However, the judge may sentence the defendant to any of the other sentencing alternatives authorized by § 40-35-104(c), which include, but are not limited to, periodic confinement, work release, community corrections, probation, or judicial diversion.

> (b)(1) A defendant convicted of an offense set out in subsection (c) may be sentenced to any of the sentencing alternatives authorized by § 40-35-104(c), including a period of continuous confinement, if the sentencing judge determines the defendant:

(A) Has at least one (1) prior conviction at the time the subsection (c) offense is committed; or

(B) Violated the terms and conditions of the alternative sentence originally imposed upon the defendant pursuant to subsection (a).

. . . .

(c) As used in this section, a non-violent property offense is:

. . . .

(11) Felony theft of property under § 39-14-103, where the amount of the theft is less than one thousand dollars ($1,000)[.]

Tennessee Code Annotated section 40-35-104(c) provides for "[t]he following sentencing alternatives in any appropriate combination are authorized for defendants otherwise eligible under this chapter":

(1) Payment of a fine either alone or in addition to any other sentence authorized by this subsection (c);

(2) Payment of restitution to the victim or victims either alone or in addition to any other sentence authorized by this subsection (c);

(3) A sentence of confinement that is suspended upon a term of probation supervision that may include community service or restitution, or both;

(4) A sentence of periodic confinement that may be served in a local jail or workhouse in conjunction with a term of probation;

(5) A sentence of continuous confinement to be served in a local jail or workhouse in conjunction with a term of probation;

(6) A sentence of continuous confinement in a local jail or workhouse;

(7) Work release in accordance with § 40-35-315;

(8) A sentence of continuous confinement in the department of correction if the conviction is for a felony and the sentence is at least one (1) year, unless:

(A) The sentence is prohibited by subsection (b); or

(B) The defendant is convicted of a violation of § 39-14-103, involving property valued at less than one thousand dollars ($1,000), and the defendant is sentenced as an especially mitigated offender as defined in § 40-35-109 or a standard offender as defined in § 40-35-105; or

(9) A sentence to a community based alternative to incarceration in accordance with the provisions, including eligibility requirements, of chapter 36 of this title.

Tenn. Code Ann. § 40-35-104 (2014).

Ordinarily, the trial court has discretion to determine whether a defendant should serve a sentence in confinement or should be granted an alternative sentence. State v. Nicholas Cole, No. M2015-02286-CCA-R3-CD, 2016 WL 6087672, at *8. However, if a defendant has been convicted of one of the enumerated non-violent property offenses listed in section 40-35-122(c), the trial court cannot order continuous confinement unless the defendant has a prior felony conviction or if the defendant has "[v]iolated the terms and conditions of the alternative sentence originally imposed upon the defendant . . . ." Id. (quoting Tenn. Code Ann. § 40-35-122(a) & (b)). This statute was enacted in 2010 with the goal of allowing non-violent property offenders "to work in order to pay restitution to the victims of their crimes without using scarce prison beds thereby permitting longer sentences for those offenders who do threaten public safety." Id. (quoting Tenn. Code Ann. § 40-35-122, Compiler's Notes; 2010 Tenn. Pub. Acts ch. 1090, § 1). Moreover, this court has previously held that section 40-35-122 is "clear and unambiguous; therefore, it should [be] enforced as written because 'it is generally presumed that the legislature acted purposefully in the subject included or excluded.'" State v. Astin D. Hill, No. W2012-02147-CCA-R3-CD, 2014 WL 683892, at * 5 (Tenn. Crim. App. Feb. 19, 2014) (quoting State v. Pope, 427 S.W.3d 363, 368 (Tenn. 2013)); see also State v. Hawk, 170 S.W.3d 547, 551 (Tenn. 2005) (discussing statutory interpretation).

Further, "[s]ection 40-35-122(a) specifically and unequivocally omits the three continuous confinement provisions of Section 40-35[-]104(c) from the sentences available for a non-violent property offender." State v. Preston Rashad Royal, No. W2015-01334-CCA-R3-CD, 2016 WL 1446097, at *1 (Tenn. Crim. App. Apr. 12, 2016). If section 40-35-122 applies, the trial court cannot order split confinement, where a defendant serves some time in continuous confinement and the remainder of the sentence on probation. Cole, 2016 WL 6087672, at *8 (citing State v. Devon Elliott Cruze, No. E2014-01847-CCA-R3-CD, 2015 WL 5064070, at *4 (Tenn. Crim. App. Aug. 27, 2015)

-23-

(reversing the trial court's order that the defendant serve sixty days in continuous confinement and the balance on probation as violative of section 40-35-122).

Section 40-35-122 applies to the Defendant's case. The Defendant was convicted in Count 14 of theft of property valued at more than $500 but less than $1000, for events occurring on June 16, 2016, at Dick's Sporting Goods. Theft under $1000 is a non-violent property offense as defined by Tennessee Code Annotated section 40-35-122(c)(11). Moreover, the Defendant did not have any prior qualifying felony conviction, and the Defendant was never placed on any alternative sentence for the instant offenses. Accordingly, he fell squarely within the ambit of section 40-35-122, and the trial court was not authorized to sentence him to continuous confinement for two years. See, e.g., State v. Sandra Kay Stutts, No. W2016-01681-CCA-R3-CD, 2018 WL 637943, at *5-6 (Tenn. Crim. App. Mar. 31, 2018); Cole, 2016 WL 6087672, at *6-9; Royal, 2016 WL 1446097, at *1-2; Cruze, No. E2014-01847-CCA-R3-CD, 2015 WL 5064070, at *4; Hill, 2014 WL 683892, at *4-5 (all concluding the same under similar fact patterns).

We agree with both the Defendant and the State that the Defendant's sentence on Count 14 should be vacated. However, the Defendant also asks this court to remand the case to a different trial judge relying on Hill. The Defendant explains, "Due to the Division II judge's failure to follow the clear, plain language of the statute at issue here, however, the same relief is warranted in the instant matter" as provided in Hill. When a trial court's error negates the standard of abuse of discretion with a presumption of reasonableness, this court may conduct a de novo review or remand the issue. See Pollard, 432 S.W.3d at 864-65 (concluding same when the trial court fails to provide adequate reason for the imposing consecutive sentences); State v. King, 432 S.W.3d 316, 327-28 (Tenn. 2014) (concluding same when the trial court's comments denying judicial diversion were inadequate). We believe this is a more appropriate case for de novo review.

In the five cases cited above wherein this court reached the same conclusion that the trial court erred in imposing continuous confinement for a non-violent property offense, this court has remanded the case for resentencing with instructions to the trial court to impose a sentence authorized by the applicable statutes. However, the trial judge in this case is the same trial judge as in Hill and Royal. Hill was decided in February 2014, and this court remanded to a different trial judge because the trial judge specifically acknowledged its understanding of section 40-35-122 but declined to follow it, instead "taking the position that the Legislature could not have intended for it to apply to someone with the [d]efendant's juvenile criminal history." 2014 WL 683892, at *7. In Royal, decided in April 2016, the same judge again overruled the Defendant's objection

-24-

to the legality of his sentences before being reversed on appeal. 2016 WL 1446097, at *1.

Pursuant to dictates of section 40-35-122, sentencing alternatives are limited to those listed in section 40-35-104(c)(1), (2), (3), (4), (7), and (9). Regarding subsections (c)(1) and (2), the trial court imposed a fine of $1000 on Count 14 but did not order restitution. We see no reason to depart from this determination. Moreover, we feel that the appropriate sentence for the Defendant's conviction for Class E felony theft is supervised probation pursuant to subsection (c)(3). The Defendant will serve twelve years in the Department of Correction before beginning service of his mandatorily consecutive two-year sentence on Count 14. All of the Defendant's convictions are for non-violent property offenses, although the others are not governed by section -122. The Defendant's effective sentence—twelve years' incarceration followed by two years' probation—is sufficient to protect the public from the Defendant and will serve to appropriately punish him for his crimes. See Tenn. Code Ann. § 40-35-102(1) & (3).

CONCLUSION

Based on our review of the record and the applicable law, we affirm in part and reverse in part the judgments of the trial court. In accordance with this opinion, Counts 7 through 10 are remanded for correction of clerical errors in the judgment forms. The sentence in Count 14 is vacated, and the trial court is ordered upon remand to enter a judgment reflecting that the Defendant's two-year sentence on that count be served on supervised probation with the imposition of $1000 fine. The remaining counts are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-25-